No. 23-2427

# United States Court of Appeals
# for the Federal Circuit

---

RANGE OF MOTION PRODUCTS, LLC,

*Plaintiff-Appellant,*

v.

ARMAID COMPANY INC.,

*Defendant-Appellee,*

---

Appeal from the United States District Court for the District of Maine
Judge Jon D. Levy 1:22-CV-0091

---

## RESPONSE BRIEF FOR DEFENDANT-APPELLEE
## THE ARMAID COMPANY INC.

---

Peter J. Brann
pbrann@brannlaw.com
Stacy O. Stitham
sstitham@brannlaw.com
David Swetnam-Burland
dsb@brannlaw.com
BRANN & ISAACSON
113 Lisbon Street
P.O. Box 3070
Lewiston, ME 04243
(207) 786-3566

Joshua J. Fougere
jfougere@sidley.com
Claire Homsher
chomsher@sidley.com
Susan Whaley
susan.whaley@sidley.com
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, D.C. 20005
(202) 736-8000

*Counsel for Defendant-Appellee The Armaid Company Inc.*

# CERTIFICATE OF INTEREST

Counsel for Appellee certifies the following:

1.  **Represented Entities.**  Provide the full names of all entities represented by undersigned counsel in this case.  Fed. Cir. R. 47.4(a)(1).

    The Armaid Company Inc.

2.  **Real Party in Interest.**  Provide the full names of all real parties in interest for the entities.  Do not list the real parties if they are the same as the entities.  Fed. Cir. R. 47.4(a)(2).

    The Armaid Company Inc. is owned by the Estate of Terry M. Cross.

3.  **Parent Corporations and Stockholders.**  Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.  Fed. Cir. R. 47.4(a)(3).

    None.

4.  **Legal Representatives.**  List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities.  Do not include those who have already entered an appearance in this court.  Fed. Cir. R. 47.4(a)(4).

    None.

5.  **Related Cases.**  Provide the case titles and numbers of any case known to be pending in this court or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal.  Do not include the originating case number(s) for this case.  Fed. Cir. R. 47.4(a)(5).

    None.

**6.**    **Organizational Victims and Bankruptcy Cases.**  Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees).  Fed. Cir. R. 47.4(a)(6).

Not Applicable.

March 8, 2024                    /s/ Joshua J. Fougere
                                 Joshua J. Fougere
                                 SIDLEY AUSTIN LLP
                                 1501 K Street, N.W.
                                 Washington, D.C. 20005
                                 (202) 736-8000

                                 *Counsel  for  Defendant-Appellee*
                                 *The Armaid Company, Inc.*

# TABLE OF CONTENTS

CERTIFICATE OF INTEREST ................................................................. i

TABLE OF CONTENTS ....................................................................... iii

TABLE OF AUTHORITIES.................................................................... v

STATEMENT OF RELATED CASES .................................................... vii

INTRODUCTION................................................................................ 1

STATEMENT OF ISSUES.................................................................... 3

STATEMENT OF THE CASE ................................................................ 4

    A.    Factual Background.................................................................. 4

        1.    The Armaid1 and U.S. Patent No. 5,792,081..................... 4

        2.    The Rolflex and The Formation of ROM........................... 6

        3.    The Rolfex's Associated Utility and Design Patent
            Applications. ................................................................ 9

        4.    Cross's Return to Armaid and the Armaid2. .................. 13

    B.    Procedural Background............................................................ 16

        1.    The California State Court Case.................................... 17

        2.    ROM's First Infringement Suit Against Armaid. ........... 19

        3.    ROM's Second Infringement Suit Against Armaid.......... 21

SUMMARY OF ARGUMENT ............................................................. 28

STANDARD OF REVIEW .................................................................. 32

ARGUMENT ................................................................................... 32

I.    THE DISTRICT COURT PROPERLY CONSTRUED THE
    D'155 PATENT. ........................................................................ 33

    A.    The District Court's Claim Construction Analysis
        Carefully Followed this Court's Precedent........................... 33

    B.    ROM's Appeal Arguments Are Wrong.................................. 37

        1.    The District Court Did Not "Eliminate[] Entire
            Structural Elements From the Claimed Design."............ 37

2.      ROM's Arguments About Extrinsic Evidence Are Wrong and Support Affirmance. ................................................ 41

3.      ROM's Alternative Design Arguments Are Forfeited and Wrong. ............................................................................ 46

C.      ROM Offers No Viable Proposed Construction. ................... 48

II.     THE DISTRICT COURT PROPERLY GRANTED SUMMARY JUDGMENT OF NON-INFRINGEMENT. .......... 50

A.      The District Court's Non-Infringement Analysis Carefully Followed this Court's Precedent. .......................................... 51

B.      ROM's Appeal Arguments Are Wrong. ............................... 55

1.      ROM's First Argument Rests on Its Incorrect Claim Construction Position and Is Meritless. ........................... 55

2.      ROM's Second Argument Flouts This Court's Precedent. ................................................................. 60

CONCLUSION ...................................................................... 61

CERTIFICATE OF SERVICE

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amini Innovation Corp. v. Anthony Cal., Inc.,*
439 F.3d 1365 (Fed. Cir. 2006) ..................................................... 39, 52

*Bayer CropScience AG v. Dow AgroSciences LLC,*
728 F.3d 1324 (Fed. Cir. 2013) ........................................................ 56

*Carlisle Plastics, Inc. v. Spotless Enters., Inc.,*
178 F.3d 1313 (Fed. Cir. 1999) ........................................................ 56

*Egyptian Goddess, Inc. v. Swisa, Inc.,*
543 F.3d 665 (Fed. Cir. 2008) ................................................... *passim*

*Ethicon Endo-Surgery, Inc. v. Covidien, Inc.,*
796 F.3d 1312 (Fed. Cir. 2015) ................................................. *passim*

*High Point Design LLC v. Buyer's Direct, Inc.,*
621 F. App'x 632 (Fed. Cir. 2015) ..................................................... 53

*Hoganas AB v. Dresser Indus., Inc.,*
9 F.3d 948 (Fed. Cir. 1993) ............................................................... 11

*Lanard Toys Ltd. v. Dolgencorp LLC,*
958 F.3d 1337 (Fed. Cir. 2020) ................................................. *passim*

*Lanard Toys Ltd. v. Toys 'R' Us-Del., Inc.,*
No. 3:21-cv-849, 2019 WL 1304290 (M.D. Fla. Mar. 21,
2019) ............................................................................................ 52

*Lee v. Dayton-Hudson Corp.,*
838 F.2d 1186 (Fed. Cir. 1988) ........................................................ 33

*McKenney v. Mangino,*
873 F.3d 75 (1st Cir. 2017) .............................................................. 32

*Micro Signal Rsch., Inc. v. Otus,*
     417 F.3d 28 (1st Cir. 2005) ................................................. 21

*Nagle v. Alspach,*
     8 F.3d 141 (3d Cir. 1993) .................................................. 57

*PHG Techs., LLC v. St. John Cos.,*
     469 F.3d 1361 (Fed. Cir. 2006) ......................................... 45

*Phillips v. AWH Corp.,*
     415 F.3d 1303 (Fed. Cir. 2005) .................................... 43, 44

*Range of Motion Prods. LLC v. Armaid Co.,*
     No. 1:21-cv-00105, 2021 WL 3476607 (D. Me. Aug. 6,
     2021) ...................................................................... *passim*

*Singleton v. Wulff,*
     428 U.S. 106 (1976) .......................................................... 46

*Sport Dimension, Inc. v. Coleman Co.,*
     820 F.3d 1316 (Fed. Cir. 2016) .................................. *passim*

*Stahl v. Fenn Cross,*
     No. D081095, 2024 WL 337169 (Cal. Ct. App. Jan. 30,
     2024) .................................................................................. 18

**Statutes**

35 U.S.C. § 171(a) ................................................................... 33

**Other Authorities**

USPTO, 15/095,010, Decision on Appeal (Jan. 6, 2024 ) ........................ 11

## STATEMENT OF RELATED CASES

No appeal in this case has previously been before this or any other appellate court, and Armaid is not aware of any pending case that will directly affect or be directly affected by the Court's decision in this case.

# INTRODUCTION

This is the second infringement case—and third lawsuit overall—that Range of Motion (ROM) has filed seeking to stop The Armaid Company from selling its body massaging device called the Armaid2. In the first infringement case, the district court found the scope of ROM's U.S. Design Patent No. D802,155 ("D'155 patent") to be "relatively narrow," found that the claimed design is not "substantially similar" to the Armaid2's design, and denied ROM's preliminary injunction request. ROM promptly abandoned the case. Seven months later, ROM refiled a materially identical complaint. This time, ROM was content to rely on the record from the first case—even though ROM bears the burden of proof, and even though the district court had found ROM's evidence lacking and Armaid's evidence "persuasive."

The district court scrupulously applied this Court's precedent to grant summary judgment of non-infringement. *Lanard Toys Ltd. v. Dolgencorp LLC,* 958 F.3d 1337 (Fed. Cir. 2020), is powerful. Here, as there, the district court first "followed [this Court's] claim construction directives to a tee." *Id.* at 1342. Here, as there, the patentee wrongly accused the district court of "'eliminating' entire elements of the claimed

1

design," but there was actually "no error in the district court's approach to claim construction." *Id.* at 1342-43. Here, as there, the district court then "struck the correct balance of considering the ornamental aspects of the design while remaining focused on how an ordinary observer would view the overall design." *Id.* at 1344. And here, as there, "the district court correctly granted summary judgment of noninfringement." *Id.* at 1345.

To argue otherwise, ROM's appeal focuses on claim construction—even its lead non-infringement argument is premised on ROM's view of the "proper[]" "constru[ction]." ROM Br. 30. But ROM's claim construction arguments distort the district court's opinion and misstate this Court's case law. ROM primarily contends that the district court's construction "eliminat[es] entire structural elements" from the claimed design. *Id.* at 1. It does not: the district court explicitly did "*not* wholly exclude functional features" and "consider[ed] instead how those features contribute to the overall ornamentation." Appx20-21 (emphasis added).

ROM also contends that the district court's construction "rel[ied] primarily on extrinsic evidence to contradict unambiguous intrinsic

evidence." ROM Br. 1. It did not do that either. Instead, the district court recognized that the patent's "illustrations … *alone* are insufficient to determine whether design features are principally functional or ornamental." Appx22 (emphasis added). The court therefore turned to a series of factors—what ROM calls "extrinsic evidence"—that this Court explicitly says "may serve as a useful guide for claim construction" and for figuring out what is functional and what is ornamental. *Sport Dimension, Inc. v. Coleman Co.*, 820 F.3d 1316, 1322 (Fed. Cir. 2016). ROM's proposed construction, by contrast, merely parrots the claim and does nothing to distinguish between the design's ornamental and functional features, as is required. The Court should affirm.

## STATEMENT OF ISSUES

1. Whether the district court properly construed the D'155 Patent when it carefully followed this Court's precedent for construing design patents and when ROM has offered no viable alternative construction.

2. Whether the Court should affirm the district court's grant of summary judgment of non-infringement when (a) summary judgment was granted for multiple independent reasons, (b) ROM's appeal

3

arguments are largely premised on its erroneous claim construction position, and (c) the undisputed material facts establish that the Armaid2 does not infringe the narrow D'155 patent.

## STATEMENT OF THE CASE

### A. Factual Background

Terry Cross, the Armaid Company's late owner and founder, was a sports and occupational therapist and an innovator. Appx2. He is the inventor or co-inventor on a series of utility and design patents and was the initial developer of various body massaging products for both Armaid and ROM. This case concerns a particular design patent assigned to ROM, the D'155 patent, but all of Cross's inventions and products bear on the scope of that patent and ROM's allegations.

### 1. The Armaid1 and U.S. Patent No. 5,792,081.

In the early 1990s, Cross drew on his decades of work as a sports injury therapist to begin designing devices that would help relieve muscle soreness. Appx364 (¶2) (Armaid Statement of Material Fact). He invented his first massaging device in 1995 and named it the "Armaid" because it relieved tight muscles in the arms—providing *aid* to sore *arms*. *Id.* The Armaid1 is pictured here:



Appx2-3. The Armaid1 was designed for use on the arms, Appx2, and it uses "leverage, pinpoint pressure, and advanced trigger point therapy technique to relieve stress and tight muscles in the arms," Appx378 (¶3).

To protect his invention, Cross applied for a utility patent in 1995, and it issued in 1998 as U.S. Patent No. 5,792,081. Appx364 (¶3); Appx586 (¶3). The '081 patent "was embodied in the Armaid1." Appx2. It covers an "invention … relat[ing] to body massaging devices … adapted for the treatment of wrists and arms affected by carpal tunnel syndrome." Appx364 (¶3); Appx586 (¶3); Appx35 (4:4-6). It claims "a device comprising two arms, one of which is 'hingedly attach[ed]' to the other, with massaging members on each arm, and with arms that 'are shaped and dimensioned to adjustably clamp a limb between [the] …

massaging members.'" Appx2. The arms function like "adjustable pliers," and "users can grab and hold together the device's handles with their free hand." *Id.* Given the device's arm-specific focus, moreover, it is fitted with "small[] therapy attachments both in size and density for the smaller and more delicate and slender arm muscles." Appx380 (¶11).

The Armaid Company began selling the Armaid1 in 1999, and it grew to become a "popular self-therapy massage tool with many occupations and athletes." Appx379 (¶6).

### 2.    The Rolflex and The Formation of ROM

Over the years, due to the Armaid1's popularity, Cross received feedback that "people needed and wanted a way to treat their legs as well as their arms." Appx380 (¶10). In 2015, therefore, he created the "Rolflex"—a "device that massaged the entire body":



*Image 2 - The original Rolflex*

Appx3-4.

The new device included many changes and "adaptations" from the Armaid1 to ensure that it worked on more than just the arms. Appx3. One change was "opening the end of the hinge apparatus to permit the therapy arm to be detached from the device," Appx3 & n.3, allowing the device to "become a second separate therapy tool entirely," Appx381 (¶14). Neither the Armaid1 nor the later-developed Armaid2 has this "unique slide-out feature." Appx381 (¶15). Another change was to "increas[e] the curve of the arms to accommodate larger rollers as well as the user's legs." Appx3. As Cross explained—and as ROM *did not dispute*—"this change from the Armaid1 [w]as form following

7

function." Appx367 (¶12); *see also* Appx587 (¶12) (ROM not disputing this statement).

The Rolflex was an immediate hit. Shortly after its release, the product received Climbing Magazine's prestigious Editor's Choice award and was called "The Only Self-Massage Tool You'll Ever Need." Appx382 (¶21); Appx469.[1] The magazine's review praised the Rolflex's functionality, describing how "[t]esters loved that they could control the intensity by holding prongs at the top or adding in a burly rubber band for more oomph," and noting how "several slots at the base allowed testers to customize the fit to the size of their forearms and desired pressure level, including widening the whole apparatus to massage their calves and thighs as well." Appx369 (¶18); Appx588 (¶18); Appx470.

In 2016, Cross joined with Nic Bartolotta, a physical therapist, and Brian Stahl, a lawyer, to form ROM as a California limited liability corporation. Appx4; Appx553 (¶1); ROM Br. 2. ROM was started specifically in order "to sell the Rolflex." Appx4.

---

[1] The article uses the device's original name, the "Rubbit." Appx380 (¶9). As the district court did, this brief uses "Rolflex" throughout.

### 3.    The Rolfex's Associated Utility and Design Patent Applications.

Several patent applications were filed in connection with the Rolflex.

Before ROM was formed, Cross filed two provisional applications for utility patents covering different functional features of the device. Appx367 (¶14).  These were application numbers 62/144,714 and 62/195,136, both for a "Limb Massager."  *See* Appx408-467.  The applications described, for example, how the two arms are "adjustable relative to each other, providing for use with varying sized body parts" and how the "unique shape" of the massaging member "is designed to properly perform the desired therapy techniques," with "specifically designed curves to give the necessary intensity on particular spots so effective therapy can be performed."  Appx423; Appx426; Appx443; Appx446.  They also described the "the rounded shape of the bottom of the base."  Appx427; Appx447.  And the applications included figures that depicted the device like this:

9



Appx424-425; Appx444-445.[2]

In 2016, as ROM was being formed, ROM's patent attorney filed another utility patent application and a design patent application for the Rolflex. The former was non-provisional utility patent application No. 15/095,010 and listed Cross as the inventor. Appx385 (¶38). Like the previous utility applications, it described things like "specifically designed curves to give the necessary intensity on particular spots so effective therapy can be performed" and the "rounded shape of the lower portion … of the base." U.S. Patent Application 15/095,010 (Apr. 8,

---

[2] The applications ultimately expired without being acted on. Appx367 (¶14); Appx588 (¶14).

2016) at 4. Like the previous utility applications, it also included

figures that look like the Rolflex:



*Id.* Fig. 1.[3] The PTO initially rejected all claims as obvious over Cross's

'081 patent. Appx496-503.[4]

---

[3] The application itself is not part of the appeal record, but this Court can and often does take judicial notice of publicly available PTO records. *See, e.g.*, *Hoganas AB v. Dresser Indus., Inc.*, 9 F.3d 948, 954 n.27 (Fed. Cir. 1993).

[4] Cross assigned all rights in the application to ROM after filing. Appx385 (¶38). ROM appealed the PTO's rejection. In January 2024, the Board held that the examiner had "fail[ed] to provide an articulated reasoning with rational underpinning to support the [obviousness] conclusion" and returned the application to the examiner. USPTO, 15/095,010, Decision on Appeal (Jan. 6, 2024 ) at 6.

At around the same time, ROM's patent attorney also filed a design patent application related to the Rolflex. Cross again signed the application as the inventor and again assigned his rights to ROM. Appx369-370 (¶20); Appx588 (¶20). The application ultimately issued as the D'155 patent at issue in this case. Appx4. ROM has "conceded" that the "Rolflex 'embod[ies] the design of the D'155 [p]atent.'" Appx5.

That concession is understandable given what the D'155 patent discloses. Entitled "Body Massaging Apparatus," it claims "[t]he ornamental design for a body massaging apparatus, as shown and described" in eight figures and excluding any "dashed lines." Appx37. Here is one figure from the patent (on the left) alongside the Rolflex:



FIG. 4



Image 2 - The original Rolflex

Appx4-5; Appx42.

#### 4.    Cross's Return to Armaid and the Armaid2.

Cross soon had a "falling-out" with the other members of ROM. Appx5.  Although originally a majority member, Cross's ownership share was reduced to a minority share.  Appx370 (¶21); Appx588 (¶21). Cross then "returned to Maine … and concentrated his efforts on Armaid."  Appx370 (¶21); Appx588 (¶21).  There, Cross created the Armaid2—the accused product in this case.  Appx5.

Cross's declaration explains—from the inventor's unique perspective—the genesis for the Armaid2 and the changes that it contains.  Over the decades selling the Armaid1, Cross had "received practical feedback from [his] customers stating that there were some particular features that could be improved upon."  Appx389 (¶52). According to Cross, he therefore "decided to update and improve the Armaid 1" and "made several improvements in transforming the Armaid1 into the Armaid2."  Appx389 (¶¶52-53).[5]

---

[5] As the district court noted, ROM disputes Cross's statements on this point.  Appx5.  After oral argument on the summary judgment motion, ROM belatedly sought to submit evidence to support its position. Appx15 n.9.  But ROM had previously relied only on a declaration and "did not explain how th[e new] evidence can help to elucidate the scope of the D'155 patent or which design features of the D'155 patent are driven by functional considerations."  *Id.*  The district court denied the

Cross went on to explain many of the changes from the Armaid1 to the Armaid2. They included:

- Eliminating the ball joint and extension in the Armaid1's base and replacing it with a concave base that "mimic[s] the curve of the thigh" to increase the device's stability. Appx371 (¶24); *see also* Appx589 (¶24).

- Enlarging the five size selection slots located in the base to give users greater ability to adjust the size of the device to accommodate differently sized arms. Appx371-372 (¶27); *see also* Appx589 (¶27).

- Shortening the Armaid2 by three inches in overall length to make it a "simpler, broader, and more stable platform." Appx371 (¶26); *see also* Appx589 (¶26).

Cross also explained various differences between the Armaid2 and the Rolflex. For instance:

- Cross gave the Armaid2 an "entirely different" base. Appx397 (¶87). It has a "contour shape," whereas the Rolflex/D'155 base is shaped like an "inverted mushroom ball." Appx372 (¶29); *see also* Appx590 (¶29).

- The "dimensions and layout and removable arm aspect of the D'155 patent are not the same from the Armaid2." Appx397 (¶89).

In addition to detailing the differences, Cross explained why the alternative designs that ROM had proposed were "not realistic" for the

---

request. *Id.* ROM's purported dispute was "immaterial to the ultimate question" anyhow. Appx29.

Armaid2 and would have reduced its functionality. Appx398-400 (¶¶97-101). Indeed, even recognizing that "the C-shaped arms are the only shape that is viable for function," Cross pointed out that "the amount of curve in the D'155 patent" (and Rolflex) is "much more pronounced" than the "much flatter" curves of the Armaid1 and Armaid2. Appx399 (¶100).

In March 2019, Cross filed a utility patent application for a "Body Massaging Device" "particularly adapted for massaging a user's wrist and forearm" and was awarded U.S. Patent No. 11,020,310 in June 2021. Appx506-524. Here is one figure from the patent alongside a picture of the Armaid2:



Appx508; Appx6.

The '310 patent describes that "[t]he hinged ends of the arms are universally attached to a support that can be strapped over the user's thigh, whereby an arm can be adjustably clamped between the sets of rollers and balls by bringing the two handles together and the arm and wrist massaged." Appx506.  It then explains many of the device's utilitarian and functional features that allow the device to operate in this way.  It details, for example, how the arm with the roller (the left arm in the picture above) is immovable and "integrally connected" to the base, while the other arm (the one on the right) can be moved across different size selection slots.  Appx521 (5:25-5:49); Appx508-509 (figs. 1-2).  The patent also describes "a base" with "an arcuate shape," Appx521 (6:5-10), and states that the "outer surface[s]" of the two arms "may have a generally continuous arcuate shape," Appx521 (6:30-31); Appx522 (7:6-8).  These described embodiments match what is depicted in the figures.  Appx508-518.

Cross died in a car accident in late 2021.  Appx6.

**B.    Procedural Background.**

This is the third lawsuit that ROM (and its members) have filed against Armaid and/or Cross.  Each time, the ROM plaintiffs have

sought to stop Armaid2 sales based on the same basic set of allegations. Each time, the ROM plaintiffs have lost.

### 1.    The California State Court Case.

In January 2020,  Stahl and Bartolotta sued Armaid in California, and ROM and Cross were soon added as parties.  Statement of Decision at 2-3, *Stahl v. Fenn Cross*, No. 37-2020-00005564-CU-BT-CTL (Super. Ct. Cal. San Diego Cnty. July 18, 2022) ("CA Stat.").  Plaintiffs asserted seven causes of action under state tort, contract, and unfair competition laws.  *Id.*

Plaintiffs first moved for "an injunction seeking to restrain Armaid Company from selling the Armaid2" on the basis that it "unfairly compete[d] with the Rolflex."  *Id.* at 3.  The motion was denied on November 10, 2020.  Focusing on the claim for breach of fiduciary duty, the trial court found that plaintiffs had "fail[ed] to establish a probability of prevailing," particularly since Armaid had "informed Plaintiffs of their plans regarding the Armaid2" and since plaintiffs had not objected after the parties sought and received a "patent analysis" of the Armaid2.  Minute Order at 4, *Stahl v. Fenn Cross*, No. 37-2020-00005564-CU-BT-CTL (Super. Ct. Cal. San Diego Cnty. Nov. 10, 2020).

The case proceeded to a bench trial, where the court found for the Armaid defendants in all respects.  In a 26-page decision, the court detailed how plaintiffs had "failed to meet their burden of proof in all causes of action."  Judgment at 1, *Stahl v. Fenn Cross*, No. 37-2020-00005564-CU-BT-CTL (Super. Ct. Cal. San Diego Cnty. Aug. 24, 2022) ("CA Judg.").  On defendants' cross-complaint, by contrast, the "evidence [wa]s overwhelming that [certain ROM parties] breached their fiduciary duties."  CA Stat. at 26.  Along the way, the trial court also found that, based on the testimony of ROM's patent attorney, "at that time of her review [of the Armaid2], she was skeptical about Armaid2 device infringing the Rolflex device patent."  *Id.* at 8.  The court awarded costs and attorney's fees to the Armaid defendants of more than $400,000.  CA Judg. at 2; ROA No. 416, *Stahl*, (Super. Ct. Cal. San Diego Cnty. Feb. 6, 2023).

ROM appealed, and the Court of Appeal affirmed, noting the "monstrous amount of evidence of [ROM's] multiple breaches of contract."  *Stahl v. Fenn Cross*, No. D081095, 2024 WL 337169, at *9 (Cal. Ct. App. Jan. 30, 2024).

18

### 2.    ROM's First Infringement Suit Against Armaid.

In April 2021, ROM sought the same underlying relief in federal court in Maine—this time, alleging that the Armaid2 infringed the D'155 patent. *Range of Motion Prods. LLC v. Armaid Co.,* No. 1:21-cv-00105, 2021 WL 3476607, at *1 (D. Me. Aug. 6, 2021) ("*ROM I*"). The case was filed six months after ROM's injunction request was denied in California, at least a year after Armaid began selling the Armaid2, and two years after ROM first sent a cease and desist letter. *See* Appx394 (¶71). Despite those delays, ROM moved for a preliminary injunction to block sales and marketing of the Armaid2 immediately. The district court denied ROM's motion. 2021 WL 3476607, at *13.

On claim construction, the district court repeatedly highlighted ROM's failure of proof and the persuasiveness of Armaid's submissions. For example, although this Court has often noted the value in "distinguish[ing] between those features of the claimed design that are ornamental and those that are purely functional," *Lanard Toys*, 958 F.3d at 1342, ROM did not even "attempt to distinguish between the aspects of the D155 patent that are functional and those that are ornamental," 2021 WL 3476607, at *5. Nor did ROM "dispute that

many of the basic features and elements of the D155 patent are functional." *Id.* at *6. Instead, ROM focused on alleged alternative designs to the Armaid2, but the district court was unconvinced: "Cross's affidavit explain[ed] why ROM's proposed alterations would reduce the Armaid2's functionality," and ROM had "submitted no evidence that rebut[ted] Cross's explanations of these functional considerations." *Id.* at *6-7. In the end, the district court found "Cross's description of the D155 patent's basic shape and elements as functional, and not ornamental," to be "both reasonable and persuasive." *Id.* at *7.

On infringement, the district court found this Court's precedential decision in *Lanard Toys* "instructive." *Id.* at *8. There, the claimed design and the accused product were pencil-shaped chalk holders that "look[ed] quite similar" at a "conceptual level." *Id.* But this Court affirmed summary judgment of non-infringement because, among other things, the "similarities stem from aspects of the design that are either functional or well-established in the prior art." *Id.* Likewise here, the district court found, "the silhouettes and basic visual impressions of the D'155 patent and the Armaid2 are similar," but "evidence presented … shows that this common basic shape … is driven by purely functional

considerations." *Id.* "[C]onsidering the overall visual impression made by the D155 patent's ornamental elements," the court carefully laid out the basis for its finding that "the Armaid2 is not substantially similar to the design claimed in the patent." *Id.* at *9. ROM had therefore "failed to establish a likelihood of success on the merits of its infringement claim." *Id.*

The district court also found that "ROM's argument that it [wa]s likely to suffer irreparable harm without a preliminary injunction [was] not supported by the evidence" and denied the motion. *Id.* at *10-13.

Although the denial of a preliminary injunction is immediately appealable, *e.g.*, *Micro Signal Rsch., Inc. v. Otus*, 417 F.3d 28, 31 (1st Cir. 2005), ROM instead stipulated to dismissal of the case the next month, Appx7.

### 3.    ROM's Second Infringement Suit Against Armaid.

Meanwhile, in California, trial had been postponed following Cross's death and was scheduled to restart on April 12, 2022. CA Stat. at 2-3. Just days before that, on April 8, 2022, ROM reopened a second front in Maine—filing a second infringement suit that did "not differ meaningfully" from the first one. Appx7; *see* Appx71-82 (complaint).

In November 2022, Armaid moved for summary judgment of non-infringement.  Appx352.  "The parties stipulated that the summary judgment record would consist of the record from (1) this case, (2) *Range of Motion I,* and (3) related litigation in California state court."  Appx2 n.1.  ROM made that stipulation despite the district court's previous finding that ROM had "submitted no evidence" to "rebut[]" Cross on the functionality of the Armaid2.  *ROM I*, 2021 WL 3476607, at *10. Indeed, ROM "expressly represented that [the district court] could rely on the existing evidence in the record to construe the claim in the D'155 patent," while simultaneously "fail[ing] to detail any additional evidence that would assist the Court with claim construction or why ROM failed to include that evidence in the summary judgment record." Appx15.[6]

*Claim Construction*.  The court started with claim construction and a detailed description of this Court's applicable standards.  Appx11-

---

[6] Despite ROM's stipulation, the district court also provided ROM with multiple opportunities to try to supplement its position, including supplemental briefing.  Appx63-64.  ROM ultimately told the district court that the record was a "complete statement of the evidence that [the district court] should consider in deciding the claim construction" question.  Appx836.

13.  Citing the *en banc* decision in *Egyptian Goddess*, the court noted that it can be "helpful to point out … various features of the claimed design as they relate to the accused design and the prior art."  Appx11-12 (quoting *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 680 (Fed. Cir. 2008)).  The district court also explained, for example, that "[d]istinguishing between functional and non-functional features of the claimed design is particularly illuminating," while recognizing that courts must take care not to "entirely eliminate a structural element from the claimed ornamental design, even though that element also served a functional purpose."  Appx12-13 (citing cases).

The court then applied those standards to construe the D'155 patent.

*Initially*, it looked at all "eight design illustrations" from the patent and then compared the D'155 patent, the Armaid2, and the prior art, the Armaid1.  Appx16-18.  Using a side-by-side image, the court noted "broad[]" similarities but also that the three designs "vary considerably."  *Id.*  The court found that the variations were "most noticeabl[e] in the arms" and that "[o]ther distinctions" existed, for

example, in the "connection between the hinge apparatus and the arm" and "the number of adjustment slots in the hinge apparatus." Appx18.

*Next*, the court distinguished functional from ornamental features. Appx18-22. Hewing closely to this Court's case law, the district court reiterated that "it is improper to wholly exclude structural elements of a design patent claim simply because they have functional aspects" and that the court should instead "consider the manner in which the functional features of the design patent 'contribute to the overall ornamentation of the design.'" Appx18 (quoting *Sport Dimension*, 820 F.3d 1323).

*Finally*, the court considered three of the factors that this Court has endorsed as a "useful guide" for assessing whether features are driven by function. Appx19. First, it looked at the "concomitant utility patent," the '081 patent, and found that any "inheritance" from that patent to the D'155 patent is "purely functional." *Id.* Second, the court looked at the Cross Affidavit—previously found to be "reasonable and persuasive," 2021 WL 3476607, at *7—and noted various changes between the Armaid1 and the D'155 patent that "were functional and designed to enable [the Rolflex's] broader application" to the entire

24

body.  Appx20.  Third, the district court considered ROM's advertising as "relevant evidence" and found that it "emphasizes the product's utilitarian features" and did "not mention the ornamental aspects … at all."  *Id*.

"Taking these facts together," the district court found that the scope of the D'155 patent is "narrow."  Appx20-21.  The court was clear that it did *not* "wholly exclude functional features, but … consider[ed] instead how those features contribute to the overall ornamentation."  *Id*.  The district court also again pointed out various shortcomings in ROM's arguments and support:  ROM had "produced few—if any—facts that aid[ed the court's] analysis of which design features are functional" and did not "develop any argument as to other alternative designs."  Appx22.  ROM's arguments were thus "unpersuasive."  Appx21-22.

*Non-Infringement*.  The district court turned to non-infringement.  It again began with a review of this Court's case law and the ordinary-observer test.  Appx23-25.  That test "comprises two steps":  (1) whether the claimed and accused designs are "plainly dissimilar," in which case there is no infringement; and (2) whether, if the designs are not plainly

25

dissimilar, there are nevertheless dissimilarities when the designs are viewed in light of the prior art. Appx23-24 (citing cases). The district court found that the Armaid2 does not infringe under both steps. Appx25-29.

Under the first step, the district court found that "the ornamental aspects of the two designs are plainly dissimilar." Appx27. Following this Court's precedent, the court looked at "the overall visual impression" and considered "the functional features of the D'155 patent only to the extent that they contribute to the overall ornamentation," while also making sure not to perform an "an element-by-element comparison." Appx26 (citing cases). In doing so, the court noted that "certain features stand out" as differences between the D'155 patent and the Armaid2. *Id.* Even though "the clamshell arms themselves are functional," for instance, the court "consider[ed] their ornamental aspects and the way they contribute to the overall design." Appx26 n.10. In a similar vein, the "hinge apparatus" and "raised interior partitions" in the Armaid2 differed from the patent, as did the "larger" (in size and proportion) "size-selection slots." Appx26-27.

Although that was sufficient to find non-infringement, the district court also found non-infringement under the second step and a comparison with the prior art. Appx27-29. "Factoring out the functional aspects of the bases"—not the entire bases, "which are notably different in any event"—the court found that "the most salient differences between the Armaid1 and the Armaid2 are the shape of the arms and the manner in which the fixed arm connects to the hinge apparatus." Appx28. With respect to the arms, the court found "notable differences among the areas just below the cylindrical handlebars in all three." *Id.* With respect to the hinges, the D'155 and Armaid1 were "quite similar" but "differ[ed]" from the Armaid2. *Id.* These differences can be seen in the red boxes added here:



| D'155 Patent *(The claimed design)* | Armaid2 *(The accused product)* | Armaid1 *(The prior art)* |
|---|---|---|

*Id.* (red emphases added).

Based on a "holistic analysis," the court found that the D'155 and the Armaid2 "are plainly dissimilar or, at the least, not substantially similar." *Id.* The court rejected ROM's contrary arguments and granted summary judgment for Armaid. Appx28-30.

## SUMMARY OF ARGUMENT

I. The district court correctly construed the D'155 patent according to the analysis that this Court prescribes.

A. The district court followed this Court's claim construction guidance "to a tee." The court began by reproducing exemplary images of the D'155 patent, Appx16-17, since a "design is better represented by an illustration … than a description," *Ethicon Endo-Surgery, Inc. v. Covidien, Inc.*, 796 F.3d 1312, 1333 (Fed. Cir. 2015). It then compared the claimed and accused designs with the prior art and noted important differences. Appx17-18. To ensure that it construed the claim "commensurate with the statutory protection afforded to *ornamental* design," *Lanard Toys*, 958 F.3d at 1342 (emphasis added), the court analyzed closely what was functional and what was ornamental, Appx19-20. In doing so, the district court still considered, as this Court

28

instructs, how functional elements "contribute[d] to the overall ornamentation" of the design. Appx20-21. This was all correct.

B.  ROM's various attacks on the district court's claim construction have no merit.

First, ROM contends that the district court "excise[d]" entire elements (the arms and base) from the claimed design. *See, e.g.*, ROM Br. 9-10. That is false. The court explicitly stated, for instance, that it considered the clamshell arms' "ornamental aspects" and how they contributed to "overall ornamentation," even though the arms "are functional." Appx26 & n.10. The court was also mindful to "[f]actor[] out" only "the functional aspects of the bases," not the entire thing. Appx28.

Second, ROM argues that the district court improperly relied on "extrinsic evidence" over "unambiguous intrinsic evidence." ROM Br. 1, 4, 21-24. Wrong again. In truth, the district court concluded that the "intrinsic evidence"—here, the patent's illustrations—did not "alone" resolve the claim construction or "determine whether design features are principally functional or ornamental." Appx22. So, as this Court explicitly allows, the district court looked to several factors to help

analyze that divide.  Appx18-20 (citing *Sport Dimension* 820 F.3d at 1322).  This is the "extrinsic evidence" that ROM criticizes, and its consideration was entirely proper.

Third, ROM claims that the district court erred by failing to treat the existence of alternative designs as a threshold and dispositive inquiry.  ROM Br. 15-16, 18.  But ROM did not make these arguments to the district court, and they are therefore forfeited.  ROM's criticisms are also misplaced:  ROM's argument rests entirely on case law concerning the *validity* standard.  For claim construction, by contrast, "whether alternative designs would adversely affect the utility of the specified article" is one of several factors that may inform the functionality inquiry, as the district court again recognized.  *Sport Dimension*, 820 F.3d at 1322.

C.  Despite ROM's inapposite critiques of the district court, ROM's own claim construction position also has a gaping hole:  ROM offers no viable alternative.  ROM's proposed constructions either fail to separate ornamental features from functional ones, or simply restate the claim without construing it.  ROM Br. 6, 25.  Neither is workable.  The district court's construction, on the other hand, was rooted in this

Court's precedent, based on sound factual findings, and correct. It
should be affirmed.

II.  The district court properly granted summary judgment of non-
infringement to Armaid.

A.  Under the relevant test, there is no infringement if: (1) the
claimed and accused designs are "plainly dissimilar"; *or* (2) differences
between the claimed and accused designs would be significant when
viewed in light of the prior art. *Ethicon*, 796 F.3d at 1335. Here, the
district court found no infringement under *both* steps due to plain
dissimilarities that became only more pronounced when the designs
were viewed in light of the prior art. Appx27-28.

B.  ROM's contrary arguments are duplicative and unfounded.
ROM's first and primary argument explicitly depends on ROM's
predicate argument that the district court incorrectly construed the
D'155 patent. It also ignores the court's conclusion—sufficient all by
itself to grant summary judgment—that the D'155 patent and the
Armaid2 are plainly dissimilar. Even if the Court considers ROM's
scattered non-infringement arguments, however, they are based on only
conclusory and speculative statements, cite nothing from the record,

and fail to engage with the district court's contrary findings. The Court should affirm.

## STANDARD OF REVIEW

The Court reviews a "district court's ultimate claim construction of a design patent *de novo*," but it reviews "any factual findings underlying the construction for clear error." *Sport Dimension*, 820 F.3d at 1320. The Court reviews a grant of summary judgment according to the law of the regional circuit. *Lanard Toys*, 958 F.3d at 1341. In the First Circuit, that review is *de novo*. *McKenney v. Mangino,* 873 F.3d 75, 80 (1st Cir. 2017).

## ARGUMENT

"Determining whether a design patent has been infringed is a two-part test": (1) construing the claim "to determine its meaning and scope," and then (2) comparing "the properly construed claim to the accused design." *Lanard Toys*, 958 F.3d at 1341; Appx10 (same). The district court faithfully applied this Court's precedent to both steps, and ROM's contrary arguments are meritless.

## I.     THE DISTRICT COURT PROPERLY CONSTRUED THE D'155 PATENT.

The district court's claim construction assessed the facts and construed the D'155 patent under this Court's prescribed analysis. ROM has not shown any error in the district court's analysis, much less any clear error in the underlying findings, and ROM has failed to offer any viable alternative construction.

### A.     The District Court's Claim Construction Analysis Carefully Followed this Court's Precedent.

1. The "statutory protection afforded" to design patents is limited to their "ornamental design." *Lanard Toys*, 958 F.3d at 1342; *see also* 35 U.S.C. § 171(a) ("Whoever invents any new, original and ornamental design for an article of manufacture may obtain a patent therefor …."). Design patents thus "do not and cannot include claims to the structural or functional aspects of the article." *Lee v. Dayton-Hudson Corp.*, 838 F.2d 1186, 1188 (Fed. Cir. 1988).

This Court has issued several "claim construction directives" to help courts distill a design patent's proper "ornamental" scope. *Lanard Toys*, 958 F.3d at 1342. One is inherent in the nature of the task: "[b]ecause a claimed design is better represented by an illustration

rather than a description, … 'the preferable course ordinarily will be for a district court not to attempt to "construe" a design patent claim by providing a detailed verbal description of the claimed design.'" *Ethicon*, 796 F.3d at 1333.

From that baseline, however, the Court has also recognized that "there are a number of claim scope issues which may benefit from verbal or written guidance." *Id.* Chief "among them [is] the distinction between features of the claimed design that are ornamental and those that are purely functional." *Id.* When a design "contains both functional and non-functional elements," moreover, such an undertaking is required: "the scope of the claim *must be* construed in order to identify the non-functional aspects of the design as shown in the patent." *Lanard Toys*, 958 F.3d at 1342 (emphasis added). To do so, several factors "may serve as a useful guide":

> whether the protected design represents the best design; whether alternative designs would adversely affect the utility of the specified article; whether there are any concomitant utility patents; whether the advertising touts particular features of the design as having specific utility; and whether there are any elements in the design or an overall appearance clearly not dictated by function

*Sport Dimension*, 820 F.3d at 1322.

*Lanard Toys* demonstrates how the analysis is supposed to proceed. The starting point was "reproducing … exemplary figures from the patent." 958 F.3d at 1342. From there, the court "considered the functional features of the design" to "construe the claims commensurate with the statutory protection afforded to an ornamental design." *Id.* Despite the patentee's accusations of "'eliminating' entire elements of the claimed design," the district court had in fact "meticulously acknowledged the ornamental aspects of each functional element." *Id.* And the district court properly looked at "various features of the claimed design as they relate to the accused design and the prior art." *Id.* at 1342-43. This Court saw "no error in the district court's approach to claim construction." *Id.* at 1343.

2. Here, as in *Lanard Toys*, "the district court followed [this Court's] claim construction directives to a tee." *Id.* at 1342. It opened by reproducing all "eight design illustrations" from the patent and "rel[ied] on" those pictures rather than "write a detailed, feature-by-feature description." Appx16-17. Next, the district court "compar[ed] various features of the claimed design, the accused design, and the prior art"—again leading with pictures of the three. Appx17. Noting that the

D'155 patent "is broadly similar to the Armaid1," the court went on to find that "the three designs also vary considerably—most noticeably in the arms" but also in the "connection between the hinge apparatus and the arm[,] … the number of adjustment slots in the hinge apparatus[,] and … the shape of the roller cutouts." Appx18.

The district court then distinguished the patent's ornamental and functional features. Appx18-22. Looking to several applicable *Sport Dimension* factors, and taking those "facts together," the court found that "many of the Rolflex's individual features have a functional purpose and, thus, are beyond the scope of the claim in the D'155 patent." Appx20-21. The court stated (multiple times) that it did "not wholly exclude functional features, but … consider[ed] instead how those features contribute to the overall ornamentation." *Id.* Given the "design's many functional elements and its minimal ornamentation," the scope of the claim was "narrow." Appx21.

There was no clear error in the district court's underlying fact findings and "no error" overall "in the district court's approach to claim construction." *Lanard Toys*, 958 F.3d at 1343.

36

### B.     ROM's Appeal Arguments Are Wrong.

ROM's principal appeal arguments concern claim construction, but ROM's contentions reduce to a series of self-contradictory positions that misrepresent this Court's case law and the district court's actual decision.  The Court should reject them.

### 1.     The District Court Did Not "Eliminate[] Entire Structural Elements From the Claimed Design."

ROM's lead argument is that the district court "removed" or "excise[d]" or "cut" entire elements from the claimed design.  *See, e.g.*, ROM Br. 9-10, 18-21.  The district court did nothing of the sort.

ROM frames this argument through sleight of hand.  According to ROM, the district court "effectively" construed the D'155 patent to claim "[t]he ornamental design for a body massaging apparatus, as shown and described in Figs. 1–8, *except the base and the two arms*."  *Id.* at 19.  ROM's "effectively" qualifier is telling in and of itself.  ROM's contention is also demonstrably false.  What the district court actually did was exactly what this Court has directed:  the court repeatedly took care "*not* [to] wholly exclude functional features, but [to] consider instead how those features contribute to the overall ornamentation."  Appx20-21 (emphasis added); *see also, e.g.*, Appx26 ("I consider the

37

functional features of the D'155 patent only to the extent that they contribute to the overall ornamentation.").

ROM dismisses these unequivocal statements as "merely handwaving" (ROM Br. 28), but the district court's analysis of the two features alleged to be "entirely eliminate[d]"—namely, the base and the two arms—squarely refutes ROM's accusations.

Start with the two arms. In a statement that ROM's brief ignores, when applying the claim construction, the district court stated that, "[a]lthough the clamshell arms themselves are functional, *I must consider their ornamental aspects and the way they contribute to the overall design*." Appx26 n.10 (emphasis added). In support, the district court cited *Sport Dimension*—the very case that ROM claims to be "in direct opposition" to the district court's analysis. ROM Br. 5. Not only that, but the district court also called out features of the arms as "largely ornamental," including their "thick ridged outline" and the "shape of the portion of the device where the hinge apparatus attaches to the fixed arm." Appx21. Such findings necessarily mean that the district court did not excise the arms "entirely" but instead "consider[ed]

Case: 23-2427    Document: 21    Page: 47    Filed: 03/08/2024

their ornamental aspects and the way they contribute to the overall design." Appx26 n.10.[7]

The district court's consideration of the bases was similar. The court found that "the inverted mushroom base" was changed for primarily "functional" reasons. Appx20.[8] But the district court still considered such features to "the extent that they contribute to the overall ornamentation." Appx26. That much is again clear in the application of the claim construction, where the district court "[f]actor[ed] out the *functional* aspects of the bases"—*not* the entirety of the bases. Appx28 (emphasis added). That is precisely the task. *See, e.g.*, *Amini Innovation Corp. v. Anthony Cal., Inc.*, 439 F.3d 1365, 1372 (Fed. Cir. 2006) ("The trial court is correct to factor out the functional aspects of various design elements"); *Ethicon*, 796 F.3d at 1336 (when components had "a functional aspect, the underlying elements must be

---

[7] ROM also did not dispute that the increased curve of the arms in the Armaid2 "[w]as form following function." Appx367 (¶12); *see also* Appx587 (¶12) (ROM not disputing this statement).

[8] ROM itself has said the same thing: "the differences in the shape of the bases of all three products may be the result of primarily functional considerations." Appx590 (¶29).

excluded from the scope of the design claims at this general conceptual level").

ROM also complains about a part of a sentence in which the district court stated that, when comparing three designs, it "disregard[ed] distinctions among the bases, each of which serve a functional purpose outside the scope of a design patent." ROM Br. 8, 28 (citing Appx18). This is just more of the same. A proper claim construction is supposed to "identify the non-functional aspects of the design." *Lanard Toys*, 958 F.3d at 1342. By speaking about "distinctions among" the bases, that is all that the district court was doing—finding that those particular "distinctions" in the bases were primarily functional and thus outside the scope of the claims. Setting aside "*distinctions among*" the bases, however, does not mean that the district court removed the *entire* bases from the scope of the claimed design, as ROM mistakenly argues.[9]

---

[9] ROM's protests here also hurt its infringement arguments, because a recognition that the bases are different supports the conclusion that the *overall* designs of the Armaid2 and the D'155 patent are not substantially similar. *Infra* § II.

This case is therefore not, as ROM claims "identical" or even analogous to the claim construction decision that the Court vacated in *Sport Dimension*. *Contra* ROM Br. 19. Instead, this case is controlled by *Lanard Toys*. There, as here, the patentee complained that the district court had "'eliminat[ed]' entire elements of the claimed design." 958 F.3d at 1342. The Court rejected that argument in *Lanard Toys*, and it should do so again here.

### 2. ROM's Arguments About Extrinsic Evidence Are Wrong and Support Affirmance.

ROM next faults the district court for supposedly "relying primarily on extrinsic evidence to contradict unambiguous intrinsic evidence." ROM Br. 1, 4, 21-24. ROM's criticisms are misplaced and ultimately undermine ROM's appeal.

The district court's analysis again followed this Court's guidance. The court started with the intrinsic record—the patent's title, claim, and the eight drawings. Appx16. And the district court relied on those "design illustrations" above any written descriptions. Appx16-17. Contrary to ROM's position, however, the district court appreciated that this intrinsic evidence was not so "unambiguous" as to end the claim construction analysis. *Contra* ROM Br. 1, 7-8, 21-24. Far from

41

"derid[ing]" or "chastis[ing]" ROM on this point (*id.* at 24), the district court simply and correctly understood that "the illustrations in the D'155 patent … *alone* are insufficient to determine whether design features are principally functional or ornamental."  Appx22 (emphasis added).

In that scenario, this Court's precedent *tells* district courts that certain facts typically viewed as "extrinsic evidence" may help separate the functional from the ornamental.  More specifically, the Court has explicitly recognized that the following factors "may serve as a useful guide for claim construction functionality":

> whether the protected design represents the best design; whether alternative designs would adversely affect the utility of the specified article; whether there are any concomitant utility patents; whether the advertising touts particular features of the design as having specific utility; and whether there are any elements in the design or an overall appearance clearly not dictated by function

*Sport Dimension,* 820 F.3d at 1322.  Even ROM recognizes as much. ROM Br. 15 ("this Court has recently sanctioned … looking at" these factors); *id.* at 27 (looking at such factors "might have been permissible").  There was no "legal error" (ROM Br. 21) in the district court's consideration of these factors after recognizing that "the

illustrations in the D'155 patent … alone are insufficient to determine whether design features are principally functional or ornamental." Appx20.

At its core, ROM's "extrinsic evidence" position seems to confuse utility and design patents. ROM repeatedly points to the Court's *en banc* decision in *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005)—a utility patent case—to support its extrinsic-versus-intrinsic critiques. ROM Br. 21-24. But this Court's *en banc* decision in *Egyptian Goddess* is the case about design patents, and that decision does not discuss "intrinsic" and "extrinsic" evidence at all. 543 F.3d 665. Indeed, in *Ethicon*, when this Court faced claim construction issues for utility and design patents, it cited and applied *Phillips* in the utility patent analysis but not in its design patent analysis. 796 F.3d at 1323-24, 1332-33.

Distinguishing between utility and design patent analyses also makes practical sense. In the context of utility patents, words are supreme, and claim construction usually involves parsing the meaning of specific terms or phrases. Intrinsic evidence from the claims and specification alone—the "single best guide to the meaning of a disputed

term," according to *Phillips*, 415 F.3d at 1315—often spans many densely-packed pages.  "*[U]nlike utility patents*," by contrast, "a claimed design is better represented by an illustration," and "the preferable course" for claim construction is correspondingly different.  *Ethicon*, 796 F.3d at 1333 (emphasis added).

None of this undermines the importance of a design patent's intrinsic evidence and, especially, its illustrations.  As the district court recognized, however, the issue here is that these intrinsic factors "alone" do not answer the claim construction question.  Appx22.  The district court thus did not err in looking to additional factors to determine the proper scope of the D'155 patent.

If that were not enough, ROM's focus on the *Sport Dimension* factors ultimately boomerangs and strongly supports affirmance.  As ROM states, this aspect of the claim construction is an underlying "question of fact," and the district court resolved those factual points in Armaid's favor.  ROM Br. 20 n.2.  The district court considered the "concomitant utility patent" in the '081 patent and the Rolflex's advertising.  Appx18-19.  And the court consulted the best primary source evidence available: the affidavit of the deceased inventor.

Appx20; *cf. PHG Techs., LLC v. St. John Cos.*, 469 F.3d 1361, 1367
(Fed. Cir. 2006) (considering information in the affidavit of appellee's
CEO to assess whether features of a design patent were functional or
ornamental).  All three factors supported the district court's claim
construction.

These "factual findings underlying the construction" should be
reviewed "for clear error."  *Sport Dimension*, 820 F.3d at 1320.  ROM
does not even attempt to overcome such a deferential standard.  Nor
could it, particularly after "expressly represent[ing] that [the district
court] could rely on the existing evidence in the record to construe the
claim in the D'155 patent" and after "fail[ing] to detail any additional
evidence that would assist the Court with claim construction, or why
ROM failed to include that evidence in the summary judgment record."
Appx15.  The district court's factual findings on the *Sport Dimension*
factors support affirmance.[10]

---

[10] ROM is incorrect to try to label these findings as improper in the
broader context of Armaid's summary judgment motion.  ROM Br. 20
n.2.  Claim construction is a task for the court, as the district court
recognized.  Appx21-22.

### 3.    ROM's Alternative Design Arguments Are Forfeited and Wrong.

ROM's final point is an offshoot of its extrinsic evidence criticisms. In particular, ROM argues that the *Sport Dimension* factors "may inform the claim construction analysis," but "*only*" if "the existence of alternative designs is not dispositive."  ROM Br. 15-16, 18.  According to ROM, moreover, the '081 patent and Armaid1 are actually "intrinsic evidence that provide clear examples of alternative designs."  *Id.* at 25-28.  ROM is wrong.

At the outset, the Court need not even consider these points because ROM forfeited them.  ROM never argued in the district court that alternative designs should be considered as intrinsic evidence and as a part of the prosecution history for claim construction purposes.  *See* Appx531-551.  On the contrary, ROM "[did] not develop any argument as to other alternative designs that could have achieved the same function" *at all*, and the district court observed that this was "contrary to [ROM's] approach in *Range of Motion I*."  Appx22.  The Court need not and should not entertain arguments that ROM did not develop or pursue below.  *See, e.g.*, *Singleton v. Wulff*, 428 U.S. 106, 120 (1976)

("[i]t is the general rule, of course, that a federal appellate court does not consider an issue not passed upon below").[11]

Even if this Court were to consider the merits of ROM's argument, however, it changes nothing. ROM cites several cases for the proposition that the availability of alternative designs may be "dispositive" and therefore must be considered before the *Sport Dimension* factors. *See* ROM Br. 15-16, 18. But all of ROM's cited cases are about *validity*, not claim construction. Indeed, one of those cases (*Ethicon*) explicitly distinguishes between the inquiry "[f]or purposes of validity" and the subsequent question about "[t]he scope of [a] claim" when the claim "is not invalid." 796 F.3d at 1333. In the context of claim construction, "whether alternative designs would adversely affect the utility of the specified article" is just one of several factors that may inform the functionality inquiry. *Sport Dimension*, 820 F.3d at 1322. It is not a threshold prerequisite, as ROM contends. ROM Br. 15-16.

[11] Given the district court's rejection of these arguments in *ROM I*, 2021 WL 3476607, at *6, ROM's decision was presumably deliberate and strategic.

47

## C.     ROM Offers No Viable Proposed Construction.

Separate and apart from ROM's flawed appeal arguments, there is another central problem with its claim construction position:  ROM has offered no viable construction of its own.  ROM derides the district court's construction as "suspend[ing] reality" and contends that "it is hard to even determine what the District Court's construction is."  ROM Br. 34.  But ROM has no workable alternative.

This is ROM's bottom-line request:

> that this Court construe the D'155 Patent's claim as "the appearance of the body massaging apparatus, as shown in Figs. 1-8, excluding only the material depicted in dashed lines."

ROM Br. 6.  But such a construction is self-evidently inadequate because it makes no attempt to separate ornamental features from functional ones.  Even ROM recognizes at times that the claim construction exercise requires "distinguishing between functional and ornamental features."  *Id.* at 14 (quoting *Sport Dimension,* 820 F.3d at 1321).  And ROM recognizes that "the D'155 Patent does not protect [various] functional features."  *Id.* at 17.

These concessions foreclose ROM's contention that a viable construction of the D'155 patent is simply "the appearance" as shown in

48

the patent's figures. As the district court correctly explained, such a construction is incompatible with precedent: this Court "has repeatedly emphasized that it may be helpful to discuss which features of a design patent are driven by functional considerations. That discussion would be pointless and, indeed, impossible if every feature depicted in solid lines in design patents were *per se* ornamental." Appx21 (citation omitted). Yet that would be the upshot of ROM's "appearance" construction.

ROM's failure of proof is particularly striking considering ROM's opportunities to develop its positions before the district court. For example, ROM requested, and was granted, the opportunity to file supplemental authority and a sur-reply. *See* Appx63-64. ROM also filed a claim construction brief, in which it continued to maintain, as it does here, that "[t]he material depicted in solid lines is ornamental." Appx639. And, when asked at argument whether the district court should "take that [position] at face value that everything except what is in the dotted lines is ornamental," ROM answered "Yes … that's appearance." Appx839. The district court correctly rejected ROM's proposed construction, and this Court should too.

Elsewhere, ROM floats a different construction, namely, "[t]he *ornamental design* for a body massaging apparatus, as shown in Figs. 1-8, excluding only the material depicted in dashed lines." ROM Br. 25. This construction is equally unhelpful: it merely restates the language of the claim while doing nothing to actually construe it. All design patents are inherently limited to their "ornamental design." But when a design "contains both functional and non-functional elements, the scope of the claim *must be construed* in order to identify the non-functional aspects of the design as shown in the patent." *Lanard Toys*, 958 F.3d at 1342 (emphasis added). The district court followed this mandate. ROM's proposed construction does not. The Court should affirm.

## II. THE DISTRICT COURT PROPERLY GRANTED SUMMARY JUDGMENT OF NON-INFRINGEMENT.

"[H]aving construed the claim consistent with the drawings and pointed out the ornamental and functional features of the design as well as the various features as they relate to the prior art, the district court proceeded to the question of infringement." *Lanard Toys*, 958 F.3d at 1343. The court properly applied this Court's two-part ordinary-

observer test and found that the Armaid2 does not infringe under both independent prongs.  ROM's responses all fail.

### A.    The District Court's Non-Infringement Analysis Carefully Followed this Court's Precedent.

1.  The inquiry for infringement of a design patent asks whether, "in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same" such that "the resemblance" would "deceive such an observer, inducing him to purchase one supposing it to be the other." *Egyptian Goddess,* 543 F.3d at 670.

The test "comprises two steps."  Appx23.  In the first, a court compares the accused product to the claimed design to determine if they are "plainly dissimilar" or "sufficiently distinct." *Ethicon*, 796 F.3d at 1335.  If so, then the "patentee fails to meet its burden of proving infringement as a matter of law," and the inquiry ends. *Id.*  At the second step—that is, if the designs are *not* plainly dissimilar—the court compares the claimed and accused designs to "identify differences that are not noticeable in the abstract but would be significant to the hypothetical ordinary observer familiar with the prior art." *Id.*  "[W]hen the claimed design is close to the prior art designs, small differences

between the accused design and the claimed design are likely" to stand out.  *Egyptian Goddess,* 543 F.3d at 676.  The goal of the ordinary observer test is to compare the "overall similarity" between the claimed and accused designs without falling into an "element-by-element comparison."  *Amini,* 439 F.3d at 1372.

Applying these standards, this Court has repeatedly upheld summary judgment of non-infringement despite broad similarities between a patented design and accused product.  In *Lanard Toys*, the two "share[d] a broad design concept—they [we]re both chalk holders designed to look like a no. 2 pencil," 958 F.3d at 1343, as a side-by-side comparison shows:



Fig. 1 '167 patent        Defendant's "Chalk Pencil"

*Lanard Toys Ltd. v. Toys 'R' Us-Del., Inc.*, No. 3:15-cv-849, 2019 WL 1304290, at *15 (M.D. Fla. Mar. 21, 2019).  Summary judgment was

nevertheless appropriate.  958 F.3d at 1343-45.  In *Ethicon*, "[s]imilarity at [a general] conceptual level … [wa]s not sufficient to demonstrate infringement of the claimed designs."  796 F.3d at 1336 (affirming summary judgment of non-infringement).  And in *High Point Design LLC v. Buyer's Direct, Inc.*, "high-level similarities"—"both designs essentially consist[ed] of a slipper with a fuzzy portion extending upward out of the foot opening"—were "not sufficient to demonstrate infringement."  621 F. App'x 632, 641-42 (Fed. Cir. 2015) (affirming summary judgment of non-infringement).

2.  Here, the district court "struck the correct balance," correctly found that ROM fell short on both steps of the analysis, and "correctly granted summary judgment of noninfringement."  *Lanard Toys*, 958 F.3d at 1345.

On the first step, the court produced a side-by-side comparison of both designs and determined that the overall visual impression of the properly construed D'155 patent and the Armaid2 are "plainly dissimilar."  Appx25-26.  Considering "the functional features of the D'155 patent only to the extent that they contribute to the overall

53

ornamentation," Appx26, the court highlighted several noticeable

differences.  For example:

- The D'155 patent's hinge apparatus "naturally flows" into the fixed arm, whereas the Armaid2's "hinge … makes up proportionally more of the device … separated from the arm by the horizontal raised edge." *Id.*

- The Armaid2's arms include "raised interior partitions" "absent" from the Rolfex, contributing to a more "segmented appearance of the Armaid2." *Id.*

- The "size-selection slots in the Armaid2 are larger, both on their own and in proportion to the product as a whole." Appx26-27.

- The Armaid2's hinge is "blunter, less rounded," which draws the attention of the viewer more than the "subtler, rounder curves of the hinge" in the D'155 patent.  Appx27.

Overall, the Armaid2 presented a "stylized impression," whereas the

D'155 design appeared more "robust and workmanlike."  *Id.*  The

"ornamental aspects of the two designs [we]re plainly dissimilar" as a

matter of law.  *Id.*

The district court then performed the second part of the ordinary

observer test, despite recognizing that it was not necessary.  Appx27-29.

The court compared the Armaid1 (prior art), the Armaid2, and the

D'155 patent and "focus[ed] on the differences among the" three.

Appx27.  It found "notable differences," including "the areas just below
the cylindrical handlebars in" the arms and "the hinge apparatuses."
Appx27-28.  Based on a "holistic analysis," the court "conclude[d] that
the D'155 patent and the Armaid2 are plainly dissimilar or, at the least,
not substantially similar" and rejected "ROM's arguments to the
contrary."  Appx28-29.  The district court thus "correctly granted
summary judgment of noninfringement."  *Lanard Toys*, 958 F.3d at
1345.

### B.    ROM's Appeal Arguments Are Wrong.

 ROM makes two arguments concerning the district court's non-
infringement analysis.  ROM Br. 29-37.  Both fall flat.

### 1.    ROM's First Argument Rests on Its Incorrect Claim Construction Position and Is Meritless.

ROM's primary non-infringement argument is that the D'155
patent and the Armaid2 are substantially similar "[w]hen the D'155
patent is construed properly."  ROM Br. 30-34.  The Court need not
even confront this argument for two reasons.

First, it is explicitly premised on ROM's complaints about claim
construction.  The title of the section begins "[w]hen [p]roperly
[c]onstrued."  *Id.* at 30.  If the Court rejects ROM's claim construction

55

arguments discussed above, therefore, it can and should bypass these arguments entirely.  That is because the "rejection of [ROM's] construction settles the question of non-infringement and thus provides [the Court] with sufficient grounds for affirming summary judgment in [Armaid's] favor."  *Bayer CropScience AG v. Dow AgroSciences LLC*, 728 F.3d 1324, 1331-32 (Fed. Cir. 2013); *see also, e.g.*, *Carlisle Plastics, Inc. v. Spotless Enters., Inc.*, 178 F.3d 1313 (Fed. Cir. 1999) (affirming after "[a]ccepting the district court's claim construction" when the "infringement argument turns on claim construction").

Second, ROM's argument ignores the district court's findings under step one of the ordinary-observer test.  ROM nowhere confronts the district court's analysis of why the designs are "plainly dissimilar." Appx25-27.  In fact, ROM recognizes that this Court has "upheld summary judgments of noninfringement when the claimed design and the appearance of the accused product are 'plainly dissimilar,'" ROM Br. 30—without seemingly appreciating that ROM lost on that exact same basis here.  Instead, ROM contends that "the 'ordinary observer' test ultimately requires a comparison of the patented and accused designs in the context of the prior art"—the second step of the analysis—and skips

56

to analyzing that. *Id.* at 31-34. ROM's failure to engage with the district court's independent basis for non-infringement should be fatal. *See, e.g.*, *Nagle v. Alspach,* 8 F.3d 141, 143 (3d Cir. 1993) (holding that court of appeals "must affirm" when appellant did not "contest[] two of the four independent grounds upon which the district court based its grant of summary judgment, each of which is individually sufficient to support that judgment").

Even if the Court considers ROM's assorted arguments in this section, however, they are meritless. ROM starts with the conclusory statement that the D'155 and Armaid2 designs appear "substantially similar, if not outright identical, depending on the viewing angle." ROM Br. 31-32. But "[s]imilarity at [a general] conceptual level … *is not sufficient* to demonstrate infringement of the claimed designs." *Ethicon*, 796 F.3d at 1336 (emphasis added). And, as the district court stated but ROM ignores, "the rub for ROM is that most of the Armaid2's similarities to the D'155 patent are likenesses to the latter's functional features." Appx26.

ROM then provides a series of citation-less statements about what the ordinary observer supposedly "will" or "will not" do. ROM Br. 31-34

& n.6.  ROM's speculation does not hold together.  According to ROM, the ordinary observer would focus on the two arms and the base and notice that "the two arms are identical, and the bases are slightly different," and that the "identical arms form[] a much more significant portion of both designs."  *Id.* at 33.  But none of this grapples with the district court's contrary findings.  The shape of the bases is "notably different," Appx28, not just "slightly" so, *contra* ROM Br. 33.  "[T]he manner in which the fixed arm connects to the hinge apparatus" was different, and "[w]ith respect to the arm shape," moreover, "there are notable differences among the areas just below the cylindrical handlebars in all three images (though the difference is slighter between the D'155 patent and the Armaid2)."  Appx28.  That can be seen below, including how the arm of the claimed design pinches in as it approaches the handle, while the Armaid2 does not:



*Id.* (red emphases added).

ROM identifies nothing in the record to support its summary conclusions, and ROM makes no attempt to engage with the district court's findings—detailed in two different proceedings—of significant differences between the claimed design and the Armaid2.  In the district court, moreover, ROM was asked point blank whether the photographs were "enough for [ROM] to survive summary judgment" given the Cross affidavit, and ROM answered "No."  Appx831.[12]  ROM's unsupported

---

[12] ROM went on to try to explain that this "is not the only question on summary judgment here" because there is also "claim construction." Appx831.  But that only reiterates the fact that ROM's non-infringement position collapses with its claim construction one.

statements here again provide no basis to overturn the district court's careful and "holistic analysis."  Appx28.

### 2.    ROM's Second Argument Flouts This Court's Precedent.

ROM's final argument purports to apply the district court's claim construction,[13] but it is no better.  On the contrary, ROM's proposed approach would upend settled infringement standards.

First, ROM claims that the "acknowledged … overall similarities" between the D'155 patent and the Armaid2 "should have been enough reason for ROM's case to survive summary judgment."  ROM Br. 34. But ROM cites no case for that proposition, and this Court has repeatedly held the opposite.  *See supra* at 52-53 (citing *Lanard Toys*, *Ethicon*, and *High Point Design*).

Second, ROM declares that, under the "proper test for infringement," the ordinary observer "will focus primarily on the handles."  ROM Br. 36-37.  Beyond the fact that this statement again

---

[13] Even though the district court followed this Court's precedent, *supra* § I, ROM begins this section with a string of insults—saying that the court's construction "suspend[s] reality," is "hard to … determine," and "whatever that means."  ROM Br. 34-35.  These distractions are baseless.

comes with no citation or record support, it would convert the ordinary-observer test into precisely the kind of element-by-element test that precedent forbids. *See, e.g.*, *Ethicon*, 796 F.3d at 1335 ("An element-by-element comparison, untethered from application of the ordinary observer inquiry to the overall design, is procedural error."). Unlike ROM, the district court diligently adhered to this Court's guidance and conducted a "holistic analysis, rather than a piecemeal, feature-by-feature comparison." Appx28.

In the end, ROM provides no colorable argument to disturb the district court's holding that "Armaid is entitled to summary judgment on ROM's infringement claim because no reasonable jury could find that the design of the Armaid2 is substantially similar to the very narrow design claimed in the D'155 patent." Appx29.

## CONCLUSION

For the foregoing reasons, the Court should affirm the district court's grant of summary judgment.

Date: March 8, 2024

Respectfully submitted,

By: */s/* Joshua J. Fougere

Joshua J. Fougere
jfougere@sidley.com
Claire Homsher
chomsher@sidley.com
Susan Whaley
susan.whaley@sidley.com
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, D.C. 20005
(202) 736-8000

Peter J. Brann
pbrann@brannlaw.com
Stacy O. Stitham
sstitham@brannlaw.com
David Swetnam-Burland
dsb@brannlaw.com
BRANN & ISAACSON
113 Lisbon Street
P.O. Box 3070
Lewiston, ME 04243
(207) 786-3566

*Counsel for Defendant-Appellee*
*The Armaid Company Inc.*

# CERTIFICATE OF SERVICE

I hereby certify that on March 8, 2024 a true and correct copy of the foregoing was filed using the Court's CM/ECF system and a copy served on the parties' counsel of record via ECF.


DATED: March 8, 2024


/s/ Joshua J. Fougere

Joshua J. Fougere

*Counsel for Defendant-Appellee The Armaid Company Inc.*

# CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitations of Federal Rule of Appellate Procedure 32(a)(7)(B) and the Rules of this Court, because it contains 10,651 words (as determined by the Microsoft Word word-processing system used to prepare the brief), excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using the Microsoft Word word-processing system in 14-point Century Schoolbook font.


/s/ Joshua J. Fougere
Joshua J. Fougere
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, D.C. 20005
(202) 736-8000


*Counsel for Defendant-Appellee The Armaid Company Inc.*