## 23-2427

IN THE

# United States Court of Appeals

## FOR THE FEDERAL CIRCUIT

◆ ◆ ◆

RANGE OF MOTION PRODUCTS, LLC,

*Plaintiff-Appellant,*

— v. —

ARMAID COMPANY INC.,

*Defendant-Appellee.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE
JUDGE JON D. LEVY
1:22-CV-00091

## REPLY BRIEF FOR PLAINTIFF-APPELLANT

BRENDAN M. SHORTELL
DAVID J. CONNAUGHTON
JUSTIN P. TINGER
LAMBERT SHORTELL & CONNAUGHTON
100 Franklin Street
Boston, Maine 02110
(617) 720-0091

*Attorneys for Plaintiff-Appellant*

# **TABLE OF CONTENTS**

PAGE

TABLE OF AUTHORITIES ................................................... iii

REPLY SUMMARY ............................................................ 1

ARGUMENT .................................................................. 2

    I.   THE DISTRICT COURT IMPROPERLY CONSTRUED
        THE D'155 PATENT................................................... 2

       A. The District Court's Claim Construction Fails to Follow
          this Court's Precedent ............................................... 2

       B. The District Court's Construction Ignores the Ornamental
          Appearance of the Base............................................... 4

       C. The District Court's Construction Ignores the Ornamental
          Appearance of the Two Arms....................................... 9

       D. The District Court's Construction Ignores the Intrinsic
          Evidence and Gives Primacy to Extrinsic Evidence,
          Which is Wrong and Supports Reversal ......................... 14

          1.   The District Court Should Not Have Ignored
              Alternative Designs............................................ 14

          2.   The District Court Should Not Have Given Primacy
              to Extrinsic Evidence ......................................... 17

       E. Armaid Blatantly Mischaracterizes the Record .................. 19

       F. ROM's Proposed Construction is a Straightforward
          Application of this Court's Precedent and Should
          Be Adopted ....................................................... 22

    II.  THE DISTRICT COURT IMPROPERLY GRANTED
       SUMMARY JUDGMENT ............................................. 25

       A. The Patented and Accused Designs Are Not "Plainly
          Dissimilar" ....................................................... 26

PAGE

B. A Reasonable Jury Could Conclude That The Patented
and Accused Designs Are Substantially Similar.................. 29

CONCLUSION AND RELIEF SOUGHT..................................... 32

CERTIFICATE OF SERVICE

CERTIFICATE OF COMPLIANCE

# <u>TABLE OF AUTHORITIES</u>

PAGE(S)

## Cases

*Amini Innovation Corp. v. Anthony California*,
  439 F.3d 1365 (Fed. Cir. 2006) ............................................ 25

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986) ...................................................... 31

*Automotive Body Parts Association v. Ford Global Technologies, LLC*,
  930 F.3d 1314 (Fed. Cir. 2019) ........................................... 18

*Best Lock Corp. v. Ilco Unican Corp.*,
  94 F.3d 1563 (Fed. Cir. 2002) ............................................. 5

*Contessa Food Prods., Inc. v. Conagra, Inc.*,
  282 F.3d 1370 (Fed. Cir. 2002) ...................................... 22, 25

*Egyptian Goddess, Inc. v. SWISA Inc.*,
  543 F.3d 665 (Fed. Cir. 2008) ......................................*passim*

*Ethicon Endo-Surgery, Inc. v. Covidien, Inc.*,
  796 F.3d 1312 (Fed. Cir. 2015) .....................................*passim*

*Garcia-Garcia v. Costco Wholesale Corp.*,
  878 F.3d 411 (1st Cir. 2017) ............................................. 17

*L.A. Gear, Inc. v. Thom McAn Shoe Co.*,
  988 F.2d 1117 (Fed. Cir. 1993) ........................................... 15

*Lanard Toys Ltd. v. Dolgencorp LLC*,
  958 F.3d 1337 (Fed. Cir. 2020) .....................................*passim*

*Lanard Toys Ltd. v. Toys "R" Us-Delaware, Inc.*,
  2019 WL 1304290 (M.D. Fl. 2019) ...................................*passim*

*Netword, LLC v. Centraal Corp.*,
  242 F.3d 1347 (Fed. Cir. 2001) ........................................... 25

*OddzOn Products, Inc. v. Just Toys, Inc.*,
  122 F.3d 1396 (Fed. Cir. 1997) ...................................... 5, 23

*PHG Techs., LLC v. St. John Cos., Inc.*,
  496 F.3d 1361 (Fed. Cir. 2006) ........................................... 15

PAGE(S)

*Phillips v. AWH Corp.*,
    415 F.3d 1303 (Fed. Cir. 2005) ................................. 16, 18, 19

*Range of Motion Products LLC v. Armaid Company Inc.*,
    2021 WL 3476607 ......................................................... 26

*Richardson v. Stanley Works, Inc.*,
    597 F.3d 1288 (Fed. Cir. 2010) ............................................. 5

*Sport Dimension, Inc. v. Coleman Co.*,
    820 F.3d 1316 (Fed. Cir. 2016) ....................................*passim*

**Statutes**

35 U.S.C. §171(b) .............................................................. 18

## REPLY SUMMARY

Armaid's principal brief (Armaid Br.) is riddled with demonstrably false characterizations of the record and misstatements of law. Armaid fails to offer any plausible rationale for why the District Court's decision should not be overturned, and instead advocates for dramatic departures from this Court's precedent. This is telling because there is no basis in this Court's vast body of case law that supports the District Court's ruling.

To fully appreciate the inherent contradictions in the shared position of both Armaid and the District Court, this Court need look no further than the District Court's own statements. Particularly, the District Court admits that the designs of the D'155 Patent and the Armaid 2 "look quite similar," but then goes on to conclude that the designs are somehow "plainly dissimilar" in the same paragraph. Appx26. Indeed, the District Court admits that the designs are quite similar after only comparing the two designs side-by-side, a position which Armaid previously disavowed. Appx358 (Armaid arguing that "the Court should [not] simply conduct a side-by-side comparison of the figures of the [two designs].").

The District Court's Order should be reversed in its entirety, and the case should be remanded with instructions to construe the D'155 Patent's claim as "the appearance of the body massaging apparatus, as shown in Figs. 1-8, excluding only the material depicted in dashed lines."

## **ARGUMENT**

## I.    **THE DISTRICT COURT IMPROPERLY CONSTRUED THE D'155 PATENT.**

Armaid argues that the District Court's claim construction analysis carefully applied this Court's precedent – it did not. In attempting to prove this point, Armaid analogizes this case to *Lanard Toys Ltd. V. Dolgencorp LLC*, 958 F.3d 1337 (Fed. Cir. 2020), where this Court determined that "the district court followed our claim construction directives to a tee." *Id* at 1342. In *Lanard Toys*, however, the district court correctly identified the functional elements of the design patent, while also acknowledging that each of the functional elements had a protected ornamental design. *Lanard Toys Ltd. V. Toys "R" Us-Delaware, Inc.*, 2019 WL 1304290 *12 (M.D. Fl. 2019)(recognizing that "the particular ornamental designs adorning [the functional] elements" are protected by the design patent). Contrarily, in this case, the District Court identified the functional design elements and then proceeded to completely ignore the ornamental aspects of those elements, which is in direct opposition with this Court's precedent.

### A. The District Court's Claim Construction Fails to Follow this Court's Precedent.

Armaid does not contest that eliminating whole aspects of the claimed design is reversible error – it is. While a court may <u>acknowledge</u> functional elements, it must <u>not eliminate</u> them from the claimed design. *Sport Dimension,*

2

*Inc. v. Coleman Co.*, 820 F.3d 1316, 1321 (Fed. Cir. 2016) ("in no case did we entirely eliminate a structural element from the claimed ornamental design, even though that element also served a functional purpose"). In light of this compelling precedent, Armaid simply argues that the District Court did not eliminate whole aspects of the claimed design. Armaid Br. 37.

To support its position, Armaid points to "unequivocal statements" from the District Court, where the court claims it is "*not* wholly exclud[ing] functional features, but consider[ing] instead how those features contribute to the overall ornamentation." Armaid Br. 37-38 (citing Appx20-21, Appx26). However, it is clear from reading the entire District Court's opinion that what the court <u>says</u> and what the court <u>does</u> are entirely different. A comparison to the district court's claim construction in *Lanard Toys* highlights the District Court's errors in this case.

In *Lanard Toys*, the district court construed a patented design for a pencil-shaped chalk holder and began its claim construction by first acknowledging that "the scope of the claimed design encompasses, 'its visual appearance as a whole,' and in particular 'the visual impression it creates.'" *Lanard Toys*, 2019 WL 1304290 at *11 (citing *Contessa Food Prods., Inc. v. Conagra, Inc.,* 282 F.3d 1370, 1381-82 (Fed. Cir. 2002)). The court also reproduced the design patent

figures but did "not undertake a detailed written description" of the design patent, choosing instead to rely on the drawings. *Id.*

The district court then proceeded to identify the functional features of the design, which consisted of "four elements: the conical tapered piece, the hexagonal elongated body, the cylindrical ferrule, and the columnar eraser." *Id*. The district court found that each of these structural features served "a functional purpose," namely, "the conical tapered piece holds the chalk in place for writing, the elongated body stores chalk and provides a surface for the user to grasp, the ferrule attaches the eraser to the body of the chalk holder and unscrews to allow the user to access the inside of the device for storage, and the eraser serves to erase." *Id.* However, the district court found "no evidence that the particular ornamental designs adorning these [functional] elements were essential to the use of the article," and so concluded that the scope of the patented design was "limited to the ornamental aspects of the design, and not the underlying functional design elements." *Id* at *12. In other words, the district court in *Lanard* <u>identified</u> the functional elements of the design but did not <u>ignore</u> them, as the District Court wrongly did in this case.

### B. The District Court's Construction Ignores the Ornamental Appearance of the Base.

Here, the District Court failed to recognize that the functional elements of a valid design patent also have protectable ornamental aspects. This Court's case law

is replete with examples of design patent claims for products whose functional features also have a protectable ornamental appearance. *See, e.g., Sport Dimension,* 820 F.3d 1316 (personal flotation devices); *Richardson v. Stanley Works, Inc.*, 597 F.3d 1288 (Fed. Cir. 2010) (construction tools); *OddzOn Products, Inc. v. Just Toys, Inc.,* 122 F.3d 1396 (Fed. Cir. 1997) (football toys); and *Ethicon Endo-Surgery, Inc. v. Covidien, Inc.,* 796 F.3d 1312 (Fed. Cir. 2015) (surgical devices). The only time that the ornamental design for the functional features of a product shown in a design patent's drawings is not protectable is when the overall appearance of the product is "dictated by function," therefore invalidating any design patent on the product. *See Best Lock Corp. v. Ilco Unican Corp.,*  94 F.3d 1563, 1566-67 (Fed. Cir. 2002)(invalidating a design patent on the shape of a key designed to fit in a similarly-shaped keyhole); *but see Ethicon*, 796 F.3d at 1333 (citing *L.A. Gear, Inc. v. Thom McAn Shoe Co.*, 988 F.2d 1117, 1123 (Fed. Cir. 1993) and explaining that "if a design claim is not invalid…the scope of that claim…must be limited to the ornamental aspects of the design and does not extend to 'the broader general design concept.'").

The District Court did not realize that, unless a design patent is invalid, all of the claimed design's functional features have protectable ornamental aspects. This lack of understanding is evident from the District Court's claim construction analysis: "disregarding distinctions among the bases, each of which serve a

5

functional purpose outside the scope of a design patent." Appx18. The full context behind this unequivocal statement makes clear that the District Court is intentionally ignoring the ornamental appearance of the bases, not merely their purported functional differences, as Armaid contests. Armaid Br. 40 (claiming that the "distinctions" the District Court is referring to are only functional, not ornamental).

Specifically, the District Court made the aforementioned statement while comparing the patented design, the accused product, and the prior art side-by-side, as follows:

> As apparent from the side-by-side comparison above the D'155 patent is broadly similar to the Armaid1: both have opposable, curved arms, roller cutouts and handles, with the arms attached to a hinge apparatus with multiple slots for size adjustment. But the three designs also vary considerably - most noticeably in the arms (**disregarding distinctions among the bases, each of which serve functional purposes outside the scope of a design patent**). The arms in the D'155 patent and Armaid2 curve gradually whereas the Armaid1's arms pinch suddenly just below the handles. Other distinctions among the three designs include (1) the connection between the hinge apparatus and the arm, particularly between the D'155 patent and the Armaid2; (2) the number of adjustment slots in the hinge apparatus; and (3) the shape of the roller cutouts.

Appx18 (emphasis added). In this context, it is clear that the District Court is talking about both the functional and ornamental aspects of the bases. For example, the District Court never identifies a functional purpose for the gradual curve of the arms in the D'155 Patent and Armaid2 right below the handles or the sudden pinch

of the Armaid1's arms, so it argues these features are ornamental.[1] Similarly, the connection between the hinge apparatus and the arm is another "distinction" that the District Court later identifies as "largely ornamental." Appx21 ("[t]o be sure, some features of the D'155 patent appear to be *largely ornamental*, including the hollowness and length of the handles, the thick ridged outline, the precise shape of the connector pivot, and *the shape of the portion of the device where the hinge apparatus attaches to the fixed arm*")(emphasis added). Perhaps most tellingly, the District Court never identifies any ornamental aspects of the bases and later proceeds to again "factor[] out the functional aspects of the bases (which are notably different in any event)." Appx28. If the District Court were not eliminating the entirety of the bases, as Armaid contends, it would not have parenthesized the statement noting that the bases *look* different.

Certainly, if the District Court truly understood that the bases have both functional and ornamental aspects, it would have emphasized the ornamental differences throughout its opinion, instead of completely "disregarding distinctions among the bases." Appx18. In fact, for an opinion granting summary judgment of non-infringement, it is surprising that this ornamental difference between the patented design and accused product is mentioned *only twice* in the entire decision,

---

[1] This is also Armaid's understanding of the District Court's opinion. *See* Armaid Br. 27 (outlining in red boxes the portion of the arms just below the handles in all three designs).

both times in parenthetical statements. Appx18, Appx28. Notably, an admission that one element of the D'155 Patent looks different in the Armaid2 is not enough to undermine ROM's infringement arguments because the remaining elements of the designs are substantially similar, if not identical, as is the design when viewed as a whole.[2] *Egyptian Goddess,* 543 F.3d 665, 677 (Fed. Cir. 2008) (*en banc*)(the "ordinary observer" test requires the finder of fact to compare similarities of the *overall* designs in light of the prior art, not conduct an "element-by-element comparison.").

The District Court not only disregarded all ornamental differences between the bases in both the claim construction and infringement sections of its opinion, but also identified the base as one of the "many…design features in the D'155 patent [that] are driven by function." Appx19. Particularly, the District Court looked to the self-serving affidavit of Armaid's then-President, Terry Cross, to "shed[] light on *which* features of the D'155 patent are *driven by functional considerations*." Appx20 (emphasis added). According to Cross, "the inverted mushroom base" is one of many "purely functional" features in the D'155 Patent (Appx20), and so the District Court "factor[ed] out the functional aspects of the bases" in its infringement analysis. Appx28.[3] This is in stark contrast with *Lanard*

---

[2] *See* Pages 28-29, *infra.*

[3] Again, if a design is "purely functional," or "driven by function," it is invalid. *See Ethicon,* 796 F.3d at 1333.

8

*Toys* along with the remainder of this Court's precedent. The District Court eliminated the *entire* base from the scope of claimed design, which alone is reversible error. *Sport Dimension*, 820 F.3d at 1322.

### C. The District Court's Construction Ignores the Ornamental Appearance of the Two Arms.

The District Court's claim construction also ignores "the overall clamshell appearance of the arms" as another feature of the D'155 Patent that is purportedly "driven by functional considerations." Appx20. In doing so, the District Court couldn't have been clearer that it was eliminating the two arms from the scope of the claimed design, which is, again, reversible error. However, Armaid contends that the District Court only discounted the functional aspects of the clamshell arms, not their ornamental aspects. Armaid Br. 38 (citing Appx26 n.10). The District Court's statements squarely refute this mischaracterization.

The District Court relies primarily on the self-serving Cross affidavit and ROM's marketing materials for the Rolflex to determine that the arms are functional, and thus not protected by the D'155 Patent. The District Court states first that the "overall clamshell *appearance of the arms*" is "*driven by function*al considerations." Appx20 (emphasis added). The District Court then points to ROM's website, which highlights how the "clam-shaped roller arms provide significant leverage." Appx20. The District Court then concludes "many of the Rolflex's individual features have a functional purpose and, thus are beyond the

scope of the claim in the D'155 patent." Appx20. It is clear from this context that the arms are another one of the Rolflex's features that the District Court regards as "beyond the scope" of the D'155 Patent, and so its construction eliminates the appearance of the arms.

However, in the very next sentence, the District Court claims "I do not wholly exclude functional features, but I consider instead how those features contribute to the overall ornamentation." Appx20-Appx21 (citing *Sport Dimension*, 820 F.3d at 1322-23). Now, even though the District Court cites the proper standard, it is clear from reading the rest of the opinion that the District Court did not understand how to apply this standard.

Based on *Sport Dimension*, the proper standard requires "look[ing] to the *overall design*…disclosed in the [design] patent to determine the proper claim construction." *Sport Dimension*, 820 F.3d at 1323.[4] While correctly applying that standard, this Court recognized that "the overall design of [the] personal flotation device disclosed in the [design] patent…includes the *appearance* of three interconnected rectangles…[a]nd the design includes the *shape* of the *armbands and side torso tapering*, to the extent that they contribute to the overall ornamentation of the design." *Id* (emphasis added). It is important to note that, in

---

[4] Again, the District Court's construction is "based primarily on a concomitant utility patent, Cross's affidavit, and Rolflex marketing materials," not the overall design of the D'155 Patent. Appx19. This alone is reversible error. *Id*.

*Sport Dimension*, the district court had previously completely removed the functional armbands and side torso tapering from its construction, so this Court was correcting the district court's construction, by acknowledging, not ignoring, the ornamental aspects of these functional elements, which included their "appearance" and/or their "shape." *Id*; *see Lanard*, 958 F.3d at 1342 (applauding a district court's construction that "meticulously acknowledged the ornamental aspects of each functional element").

Similar to its construction of the base, the District Court here fails to acknowledge that the appearance and/or the shape of the "clamshell arms" *itself* is part of the ornamental design claimed in the D'155 Patent, which is precisely how the arms "contribute to the overall ornamentation of the design." *See Sport Dimension*, 820 F.3d at 1323. Rather, the District Court seems to think that the way the arms "contribute to the overall ornamentation" is simply by connecting the features that the District Court considers to be ornamental.

For example, in the sentence immediately following the District Court's statement that it must consider how the arms "contribute to the overall ornamentation" of the design, the District Court identifies "some features of the D'155 patent [that] appear to be largely ornamental, including the hollowness and length of the handles, the thick ridged outline, the precise shape of the connector pivot, and the shape of the portion of the device where the hinge apparatus attaches

11

to the fixed arm." Appx21. To be sure, these are all "largely ornamental" features that are *attached to* the arms, but they are not *themselves* the clamshell arms. Armaid also understands that this is what the District Court is saying. Armaid Br. 38 (citing the same section of Appx21 to prove what the District Court considered the ornamental "features of the arms" to be).

Even the District Court's infringement analysis, which Armaid also cites to, confirms that the "overall clamshell appearance of the arms" was completely ignored, but other "ornamental aspects" that are connected to the arms were not. For example, the District Court states that "[w]hen viewing the D'155 patent and the Armaid2 side-by-side, certain features stand out. In the D'155 patent, the hinge apparatus naturally flows into the fixed arm…[i]n contrast, the semi-rectangular hinge apparatus of the Armaid2 makes up proportionally more of the device and forms the entire base of the product, separated from the arm by a horizontal raised edge." Appx26. The District Court continues by explaining that "[t]he separation of the hinge apparatus contributes to the overall segmented appearance of the Armaid2 – a difference reinforced by the presence of raised interior partitions in the clamshell arms present in the Armaid2 but absent in the D'155 patent." Appx26.

Again, all of the aforementioned ornamental features that the District Court compares are connected to the arms but are not themselves the arms. That is why,

immediately following the above analysis, the District Court only mentions the "clamshell arms" in a footnote, explaining that "[a]lthough the clamshell arms *themselves* are functional, I must consider their ornamental aspects and the way they contribute to the overall design." Appx 26 n.10 (emphasis added). With this expanded context, it is clear that the "ornamental aspects" of the clamshell arms that the District Court is referring to is the way the "hinge apparatus naturally *flows into* the fixed arm" or the "raised interior partitions *in* the clamshell arms," not the appearance of the arms themselves. Appx26 (emphasis added).

Contrary to Armaid's assertions, this construction is also in direct opposition with *Lanard Toys*, where the court "meticulously acknowledged the ornamental aspects of each functional element," not the ornamental aspects *connected to* the functional elements. *Lanard Toys*, 958 F.3d at 1342; *see Lanard Toys*, 2019 WL 1304290 at *12 (acknowledging the "columnar shape of the [functional] eraser, the specific grooved appearance of the [functional] ferrule, the smooth surface and straight taper of the [functional] conical piece, and the specific proportional size of these elements in relation to each other").

Therefore, the District Court completely ignored, and thus eliminated from its construction, the "overall clamshell appearance of the arms" *themselves*, which it found to be "driven by functional considerations." Appx20, Appx26. This is

legal error and independently supports reversal. *Sport Dimension*, 820 F.3d at 1322-23.

### D. The District Court's Construction Ignores the Intrinsic Evidence and Gives Primacy to Extrinsic Evidence, Which is Wrong and Supports Reversal.

The District Court based its claim construction primarily on extrinsic evidence, instead of the D'155 Patent and the intrinsic record, in particular ignoring the often "dispositive" alternative prior art designs when considering functionality. Appx19 ("And like in *Range of Motion I,* my conclusions are based primarily on a concomitant utility patent, Cross's affidavit, and Rolflex marketing materials."). This is legal error. *Sport Dimension*, 820 F.3d at 1323 ("[w]e thus look to the overall design…disclosed in the [design] patent to determine the proper construction").

### 1. The District Court Should Not Have Ignored Alternative Designs.

Looking to alternative designs is often dispositive as to a claimed design's ornamentality. However, the District Court discounted ROM's intrinsic evidence of alternative designs, which resulted in the total elimination of the arms and base from the ultimate claim construction. Appx22 (ignoring ROM's alternative design arguments, and choosing instead to rely on "the Cross affidavit explain[ing] that many of the changes to the Armaid1 reflected in the D'155 patent…were driven by functional considerations"). In doing so, the District Court failed to appreciate that,

when compared to the other evidence, the alternative designs prove that all of the individual, purportedly "principally functional" design features also have a protectable ornamental appearance.

"[W]hether alternative designs would adversely affect the utility of the specified articles" is one of the factors that "may serve as a useful guide for claim construction functionality." *Sport Dimension*, 820 F.3d at 1322 (citing *PHG Techs., LLC v. St. John Cos., Inc.*, 496 F.3d 1361, 1366 (Fed. Cir. 2006)(setting forth the "*PHG* factors")). Of all the *PHG* factors "the availability of alternative designs [is] an important – if not dispositive – factor." *Ethicon*, 796 F.3d at 1329-1330 ("where the existence of alternative designs is not dispositive…the district court may look to several other factors for its analysis"); *see also PHG*, 496 F.3d at 1366 (the availability of alternative designs is the most important factor); *L.A. Gear*, 988 F.2d at 1123 (the availability of alternative designs is often the dispositive factor when determining non-functionality).

Armaid misstates the law again when it complains that all the cases preceding the *Sport Dimension* decision that ROM cites to "are about *validity*, not claim construction." Armaid Br. 47. In *Sport Dimension*, this Court explicitly notes that factors that are helpful for validity are also applicable to functionality during claim construction. *Sport Dimension*, 820 F.3d at 1322 ("Although we introduced these factors to assist courts in determining whether a claimed design was dictated

by function and thus invalid, they may serve as a useful guide for claim
construction functionality as well.").

Not only is the existence of alternative designs typically "dispositive," but,
at least in this case, the evidence is also found exclusively in the prior art, which is
part of the intrinsic record, and is thus superior to the Cross affidavit and ROM's
marketing materials that were primarily relied on by the District Court. *See
Phillips*, 415 F.3d at 1317. As shown in the chart below, both the drawings of the
'081 Patent and the appearance of the Armaid 1 are intrinsic evidence that provide
clear examples of alternative designs for the D'155 Patent.

| Prior Art ('081 Patent) | Prior Art (Armaid1) | D'155 Patent (Fig. 3) |
|---|---|---|
|  |  |  |

This is strong evidence that the appearance of individual design elements
that the District Court identified, particularly "the overall clamshell appearance of
the arms," are not "principally functional," and thus, should not have been

completely ignored in the infringement analysis. Appx26 (ignoring the similarities between the "functional" clamshell arms of the D'155 Patent and the Armaid2, focusing instead on individual, "largely ornamental" elements attached to the arms).

> 2.  The District Court Should Not Have Given Primacy to Extrinsic Evidence.

Whether a design feature is principally functional is "an underlying 'question of fact,' and the district court resolved those factual points in Armaid's favor." Armaid Br. 44 (citing ROM Br. 20 n.2). Armaid takes this position to advocate for a "clear error" standard of review. Armaid Br. 45. However, the District Court expressly stated that it was not resolving any factual questions when construing the D'155 Patent; otherwise, it would have had to resolve those factual questions in favor of the nonmovant, ROM, on summary judgment. Appx21 (noting that claim construction is "a question of law within the exclusive province of the court"); *see Garcia-Garcia v. Costco Wholesale Corp.,* 878 F.3d 411, 417 (1st Cir. 2017)(on summary judgment the court must resolve factual questions in favor of the nonmovant). Therefore, either the District Court committed legal error by resolving questions of fact in favor of the movant, Armaid, on summary judgment, or the District Court's improper weighing of the evidence and ultimate legal conclusions based on the evidence should be reviewed *de novo. See Ethicon,*

796 F.3d at 1333 (Fed. Cir. 2015)(the ultimate claim construction of a design patent is reviewed *de novo*).

Armaid also argues that the District Court's ultimate claim construction, based primarily on extrinsic evidence, was not improper because there should be no distinction between "intrinsic" and "extrinsic" evidence for the purposes of construing design patent claims. Armaid Br. 43. However, Armaid's proposed rule is directly in conflict with statutory requirements and case law. 35 U.S.C. §171(b) states "[t]he provisions of this title relating to patents for inventions shall apply to patents for designs, except as otherwise provided." This Court has interpreted this language to require that "we apply the same rules to design and utility patents whenever possible." *Automotive Body Parts Association v. Ford Global Technologies, LLC,* 930 F.3d 1314, 1322 (Fed. Cir. 2019). Thus, there is simply "no persuasive reason" to treat claim construction evidence differently in design and utility patent cases. *Automotive Body*, 930 F.3d at 1322-23 (recognizing that the same principles of "prosecution history estoppel, inventorship, anticipation, and obviousness apply to both design patents and utility patents").

Intrinsic evidence is superior to extrinsic evidence because "extrinsic evidence consisting of expert reports and testimony is generated at the time of and for the purpose of litigation and thus can suffer from bias that is not present in intrinsic evidence." *Phillips v. AWH Corp.,* 415 F.3d 1303, 1318 (Fed. Cir. 2005).

Importantly, the deceased inventor who wrote the affidavit that the District Court relies so heavily on for its construction was Armaid's then-President, who was certainly very interested in the outcome of this litigation. Armaid's assertion that, when construing the D'155 Patent, the District Court "consulted the best primary source evidence available: the affidavit of the deceased inventor" is hard to take seriously. Armaid Br. 44. This evidence is notably not the overall design disclosed in the D'155 Patent, which provides the "primary basis for construing the claim[]." *Phillips*, 415 F.3d at 1312-1315 (the claims and specification are always the "primary basis" for construing claims); *Sport Dimension*, 820 F.3d at 1323 ("[w]e thus look to the overall design...disclosed in the [design] patent to determine the proper construction").

Despite this clear bias, the District Court relies almost exclusively on this self-serving affidavit to determine that "the overall clamshell appearance of the arms" and "the inverted mushroom base" are functional, and "thus, are beyond the scope of the claim in the D'155 patent." Appx20. Armaid does not contest that this is what happened, choosing instead to advocate for a dramatic departure from this Court's well-established precedent. Armaid Br. 43-44.

### E. Armaid Blatantly Mischaracterizes the Record.

Unable to grapple with the compelling evidence against it, Armaid resorts to blatantly mischaracterizing the record. Armaid asserts that ROM did not pursue

any arguments regarding the intrinsic evidence of alternative designs before the District Court, and so these alternative design arguments should be forfeited on appeal. Armaid Br. 30, 46 (citing Appx531-551). This could not be more incorrect. ROM extensively argues alternative designs throughout the District Court record, which is even noted in the District Court's opinion. Appx22 (acknowledging, but discounting, ROM's arguments that "a comparison with the prior art – the Armaid1 – shows that there [were] feasible alternative design[s] for the Rolflex").

ROM's summary judgment opposition, which Armaid unwittingly cites, plainly argues that "the *prior art* Armaid1 [] provides a template for clear *alternative designs* that could have been chosen for features of either the Rolflex or the Armaid 2." Appx542 (emphasis added). ROM elaborates: "certain features of either the Rolflex or the Armaid2 could have been designed similarly to features of the Armaid1 that serve the same function," and cites the Cross declaration, which admits that the clamshell shape of the arms allows all three products to work in the same way. Appx543 (ROM stating that "the D'155 Patent has clear alternative designs and is thus primarily ornamental," citing "ECF Doc. No 43-1 ("Cross Dec.") ¶14 (admitting that "the Rolflex, like the Armaid1 and the Armaid2, retain[s] the clamshell appearance used for the 'leverage effect' that makes the devices work").

Further still, these arguments are addressed in the claim construction briefing: Appx54 (stating "[t]he Armaid1 is [] *prior art* providing…evidence of possible alternative designs for certain features shown in the D'155 Patent")(emphasis added); Appx55 (stating ROM's "evidence in support of its construction is only the *intrinsic evidence* found in the D'155 Patent and the *prior art design* of the Armaid1")(emphasis added).[5] Finally, even at oral argument on summary judgment, which was converted into a truncated *Markman* hearing, ROM succinctly explained its claim construction position, which is that the D'155 Patent and the prior art, particularly the design of the Armaid1, *are* superior pieces of evidence that contradict the self-serving statements made by Cross in his affidavit. Appx825-826 (summarizing the distinction between the functional and ornamental aspects of a design); Appx828-829 (pointing to "the design of the Armaid1" to answer the District Court's specific question, which asked whether "the clamshell *shape* itself is a matter of [] design, not function")(emphasis added). These arguments were either not understood or just outright ignored by the District Court on the basis of the Cross affidavit.[6]

---

[5] The '081 Patent is listed as one of the "References Cited" on the D'155 Patent and thus is also part of the intrinsic evidence that ROM's construction relies on. Appx37.

[6] ROM only qualifies certain statements in this affidavit because they concern Cross's inspirations for developing the Rolflex and/or the Armaid, and thus, are not material, as recognized by the District Court. Appx29 (recognizing that

In short, Armaid's assertion that ROM "never developed or pursued" arguments regarding the intrinsic evidence of alternative designs before the District Court is demonstrably false, intentionally misleading, and shouldn't be taken seriously.

### F. ROM's Proposed Construction is a Straightforward Application of this Court's Precedent and Should Be Adopted.

ROM's proposed claim construction provides a viable alternative to the District Court's incorrect detailed verbal description that breaks the design down into individual elements that are either "principally functional or ornamental.". Appx19-22. Contrary to Armaid's assertions, ROM's claim construction distills the entire functional v. ornamental analysis down to a single word, "appearance." This plain-and-simple construction adequately distinguishes between the ornamental and functional aspects of the D'155 Patent, and comports with this Court's precedent, which has explicitly recognized that "the scope of a claimed design encompasses, 'its visual *appearance* as a whole,' and in particular 'the visual impression it creates.'" *Contessa Food*, 282 F.3d at 1376 (emphasis added).

ROM's construction recognizes that "a design is better represented by an illustration than it could be by any description," and that the purpose of claim construction is to help "guide the finder of fact." *Egyptian Goddess,* 543 F.3d at

---

"although there is a genuine dispute as to whether Cross developed the Armaid2 based on the Armaid1 or the Rolflex, it is immaterial to the ultimate question").

679-80. In cases where the "finder of fact" is a judge, unfamiliar with patent law, or a lay jury, constructions like the District Court's, which span pages of text only to conclude that the scope of the claim is "narrow," are unlikely to be helpful. *See* Appx16-21. Rather, when distinguishing between the ornamental and functional features of a claimed design, only relatively straightforward constructions that "acknowledge[] the ornamental aspect[s] of each functional element" are likely to provide any useful guidance. *See Lanard Toys*, 958 F.3d at 1342.

It is much easier to understand that a design patent only protects the *appearance* of a product shown in the drawings and does not extend to "the broader general design concept" of the functional features of the product described at an abstract level. *See OddzOn,* 122 F.3d at 1405 (agreeing "with the district court's claim construction, which properly limits the scope of the patent to its overall ornamental visual impression, rather than to the broader general design concept of a rocket-like tossing ball").

Armaid argues that adopting ROM's construction means that this Court would be considering "every feature depicted in solid lines" in the D'155 Patent "*per se* ornamental." Armaid Br. 49 (citing Appx21). This is a dramatic mischaracterization of ROM's position in light of the District Court's misunderstanding of the issues. ROM is *not* arguing that all features depicted in solid lines are *per se* ornamental; rather, ROM *is* arguing that all features depicted

23

in solid lines have both functional and ornamental aspects, and that the ornamental aspects of the features are their overall appearance.

The District Court's misunderstanding is evidenced no better than by Judge Levy's questions during oral argument, one of which Armaid cites, but does not provide the proper context. Armaid Br. 49 (citing Appx839). In that exchange, ROM answered that the *appearance* of everything in solid lines is ornamental, and further attempted to clarify that what Judge Levy had asked "is mainly a validity question." Appx839. ROM continued to try to explain that "it's improper to divide…the design into components. So it's either the design as a whole is functional or the design as a whole is ornamental, it…cannot be piecemeal." Appx839-840. Earlier in the oral argument, which Armaid does not cite to, ROM starts by explaining that "the *appearance*…of those [functional] structural features is what is claimed in the design patent." Appx825 (emphasis added). This proves that ROM's position has never been that everything in solid lines is "*per se* ornamental," but that every structural feature shown in the valid D'155 Patent has a protectable ornamental appearance. In light of this explanation, the District Court asked ROM, referring to the arms, if "the clamshell *shape* itself is a matter…of design, not function," to which ROM responded - "Correct, and the evidence is the…design of the Armaid1." Appx828 (emphasis added). Clearly, this did not persuade the District Court to alter its erroneous construction from the first case.

24

*See* Appx815 (Judge Levy recognizing "that the real decision here is whether I did commit legal error the first time around with respect to claims [sic] construction").

In short, ROM's proposed construction is relatively simple and straightforward, and thus is more likely to actually help a finder of fact "distinguish[] between those features of the claimed design that are ornamental and those that are purely functional." *Egyptian Goddess*, 543 F.3d at 680. ROM's "appearance" construction also comports with this Court's precedent, which explicitly recognizes that "[w]hat is controlling is the *appearance* of the design as a whole in comparison to the accused product." *Contessa Food,* 282 F.3d at 1376 (emphasis added)(citing *OddzOn*, 122 F.3d at 1405).

## II.     THE DISTRICT COURT IMPROPERLY GRANTED SUMMARY JUDGMENT

Regardless of how the D'155 Patent is construed, the District Court still erred as a matter of law by granting summary judgment of non-infringement because a reasonable jury could conclude that the ornamental designs of the D'155 Patent and the Armaid2 are substantially similar. *Amini Innovation Corp. v. Anthony California*, 439 F.3d 1365, 1371 (Fed. Cir. 2006) ("this court perceives again that conclusions about reasonable jurors are difficult to make on an issue of this factual dimension"); *Network, LLC v. Centraal Corp.*, 242 F.3d 1347, 1353 (Fed. Cir. 2001).

Based on Armaid's understanding of the "ordinary observer" test for infringement, a court must first determine whether the claimed design and accused product are "plainly dissimilar." Armaid Br. 51. Then, "if the designs are *not* plainly dissimilar," the court must compare the patented and accused designs in light of the prior art." Armaid Br. 51. Despite Armaid and the District Court's proclamations to the contrary, the designs are not "plainly dissimilar," and a reasonable jury could certainly find infringement when the D'155 Patent and the Armaid2 are compared in light of the prior art Armaid1.

### A. The Patented and Accused Designs Are Not "Plainly Dissimilar."

Since the outset of the first case, the District Court acknowledged the striking similarities between the two designs. *Range of Motion Products LLC v. Armaid Company Inc.,* 2021 WL 3476607 at *8 (stating "[t]here is no doubt that…the silhouettes and basic visual impressions of the D155 patent and the Armaid2 are similar"). Even when granting summary judgment of non-infringement in this second case, the District Court contradicts itself by admitting "[t]he D'155 patent and the Armaid 2 share a broad design concept and at a conceptual level they *look quite similar*," but "I conclude that they are…*plainly dissimilar.*" Appx26 (emphasis added).

These are not merely "conceptual" similarities, as the District Court incorrectly states and as Armaid asserts multiple times (Armaid Br. 53, 57), but

actual similarities based on a comparison of the overall ornamental designs. ROM is not asserting and has never asserted that the Armaid2 infringes the D'155 Patent because both designs are for leveraged massage devices with two arms connected to a hinge apparatus and supported by a base. Rather, ROM is stating something that it considers to be self-evidently true, the two designs *look* the same.

Take, for example, the following image from ROM's infringement contentions (Appx48), which shows a side view of the D'155 Patent (in red lines) overlayed on top of a side view of the Armaid2. As is immediately apparent, the exact shape of the arms are identical in both designs.



As another example of the striking similarities, consider the following images from ROM's infringement claim chart (Appx50-52), which show the D'155 Patent compared to the ornamental design of the Armaid2 at different angles.[7]



When viewed from these angles, the designs are virtually indistinguishable.[8]

---

[7] The top image was taken from the utility patent for the Armaid2 (Appx506-524), identified in ¶80 of the Cross affidavit. Appx396. The bottom two images were taken from Computer Aided Design ("CAD") drawings of the Armaid2 (Appx581-582), identified in ROM's statement of additional facts. Appx592.

In other words, these designs are certainly not "plainly dissimilar," so a comparison of the patented and accused designs in light of the prior art is necessary, despite Armaid's assertions to the contrary. Armaid Br. 54.

### B. A Reasonable Jury Could Conclude That The Patented and Accused Designs Are Substantially Similar.

Under the second part of the ordinary observer test, the patented and accused designs are compared in light of the prior art to determine their overall similarities, without falling into an element-by-element analysis. *See Lanard Toys*, 958 F.3d at 1343; *Ethicon*, 796 F.3d at 1335. "When…the claimed and accused design are viewed in light of the prior art, the attention of the hypothetical ordinary observer will be drawn to those aspects of the claimed design that *differ from the prior art*." *Egyptian Goddess,* 543 F.3d at 676 (emphasis added). Small differences between the patented and accused designs are only likely to stand out "when the claimed design is *close* to the prior art designs." *Id* (emphasis added).

Unlike *Lanard Toys*, where *fifteen* prior patents cited in the patent's prosecution history and *eight* additional prior art designs all for no. 2 pencils and pencil-shaped containers were at issue,[9] the District Court here only considered a *single* prior art reference that overall looks completely different than the D'155 Patent and the Armaid2, as shown in the chart below.

---

[8] Armaid denies that the images of the Armaid2 are authentic, creating a material factual dispute. Appx607.

[9] *Lanard Toys*, 2019 WL 1304290 at *12.

| Closest Prior Art (Armaid1) | D'155 Patent (Fig. 3) | Armaid2 (Side View) |
|---|---|---|
|  |  |  |

According to this Court's precedent, small differences between the patented and accused designs are unlikely to stand out to the "ordinary observer" in this scenario. *See Lanard Toys,* 958 F.3d at 1344; *Egyptian Goddess,* 543 F.3d at 676. Despite this, the District Court's analysis hyper focuses on minor distinctions between individual elements of the patented and accused designs that is largely untethered from a determination of which "aspects of the *claimed design* [] *differ* from the *prior art*," which is more likely to be a focus for the "ordinary observer." *Egyptian Goddess,* 543 F.3d at 676 (emphasis added).

As admitted by Armaid, the only "noticeable differences" that the District Court chose to focus on when presented with a *single* prior art reference, include, the way the D'155 Patent's hinge apparatus "naturally flows" into the fixed arm, the presence of "raised interior partitions" in the Armaid2, and the precise size of

the selection slots and shape of the hinges. Armaid Br. 54 (citing Appx26). However, with the exception of the barely visible "raised interior partitions," all of these purported differences between the D'155 Patent and the Armaid2 are similarities between the D'155 Patent and the prior art Armaid1, so they would not be a focus for the ordinary observer. *Egyptian Goddess,* 543 F.3d at 676.

On the other hand, the District Court identifies that "[t]he arms in the D'155 patent and Armaid2 curve gradually whereas the Armaid1's arms pinch suddenly just below the handles." Appx18. While this is not the "overall clamshell appearance of the arms" similar in both the D'155 Patent and Armaid2, it is still a similarity that the "ordinary observer" is likely to focus on because it is based on features of the claimed design that are different in the prior art. *Egyptian Goddess,* 543 F.3d at 676.

Contrary to Armaid's assertions, ROM's statements about what the ordinary observer will focus on are based on a comparison of the three designs shown in the chart above, the District Court's own contradictory statements, and this Court's precedent. When these facts are viewed in a light most favorable to ROM, it is clear that a reasonable jury could conclude that the overall designs of the D'155 Patent and the Armaid 2 are substantially similar. Accordingly, summary judgment of noninfringement was improper. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 243 (1986) (summary judgment should not be granted unless the factual questions are "so one-sided that one party must prevail as a matter of law").

## <u>CONCLUSION AND RELIEF SOUGHT</u>

For the foregoing reasons, ROM respectfully requests that the Court reverse the District Court's claim construction and non-infringement rulings. ROM also requests that the D'155 Patent's claim be construed as "the appearance of the body massaging apparatus, as shown in Figs. 1-8, excluding only the material depicted in dashed lines."

Respectfully submitted,

/s/ Brendan M. Shortell
BRENDAN M. SHORTELL
DAVID J. CONNAUGHTON
JUSTIN P. TINGER
100 Franklin Street, Suite 903
Boston, MA 02110
(617) 720-0091

Dated: March 29, 2024                    *Attorneys for Appellant*

## **CERTIFICATE OF SERVICE**

I hereby certify that on March 29, 2024, I electronically filed the foregoing Reply Brief of the Plaintiff-Appellant with the United States Court of Appeals for the Federal Circuit by using the CM/ECF system. I certify that counsel of record are registered as ECF filers and that they will be served by the CM/ECF system:

Peter J. Brann
Email: pbrann@brannlaw.com
Stacy Stitham
Email: sstitham@brannlaw.com
David Swetnam-Burland
Email: dsb@brannlaw.com
Brann & Isaacson
113 Lisbon Street, PO Box 3070
Lewiston, ME 04243-3070
Phone: (207) 786-3566

Joshua J. Fougere
Email: jfougere@sidley.com
Claire  Homsher
Email: chomsher@sidley.com
Susan Whaley
Email: susan.whaley@sidley.com
Sidley Austin LLP
1501 K. Street, N.W.
Washington, D.C. 20005
Phone: (202) 736-8000

/s/ Brendan M. Shortell
BRENDAN M. SHORTELL

## **CERTIFICATE OF COMPLIANCE**

I hereby certify that this reply brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because: (1) this reply brief contains 6,882 words; and (2) this reply brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this reply brief has been prepared in 14 point proportionally spaced Times New Roman font.

/s/ Brendan M. Shortell
BRENDAN M. SHORTELL