23-2427

***United States Court of Appeals***
***for the Federal Circuit***

RANGE OF MOTION PRODUCTS, LLC,
*Appellant,*

v.

ARMAID COMPANY INC.,
*Appellee.*

Appeal from the United States District Court for the District of Maine
in No. 1:22-cv-00091-JDL
(Chief Judge Jon D. Levy)

# BRIEF OF *AMICUS CURIAE* INDUSTRIAL DESIGNERS SOCIETY OF AMERICA IN SUPPORT OF NEITHER PARTY

Robert S. Katz
Sonia Mary Okolie
BANNER & WITCOFF, LTD.
1100 13th Street, NW, Suite 1200
Washington, DC 20005
Telephone: (202) 824-3000

Erik S. Maurer
BANNER & WITCOFF, LTD.
71 S. Wacker Drive, Suite 3600
Chicago, IL 60606
Telephone: (312) 463-5000

*Attorneys for Amicus Curiae*
*Industrial Designers Society of America*

## CERTIFICATE OF INTEREST

Counsel for *Amicus Curiae* Industrial Designers Society of America certifies the following:

1. Provide the full names of all entities represented by undersigned counsel in this case.

   **Industrial Designers Society of America**

2. Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.

   **None/Not Applicable.**

3. Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.

   **None/Not Applicable.**

4. List all law firms, partners, and associates that (a)appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

   **None/Not Applicable.**

5. Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

   **None/Not Applicable.**

6. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

   **None/Not Applicable.**

Dated: April 10, 2026 /s/ Erik S. Maurer

Erik S. Maurer

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ..... iii

INTEREST OF THE AMICUS CURIAE ..... 1

STATEMENT OF AUTHORSHIP AND FUNDING ..... 2

ARGUMENT ..... 3

I. THE COURT SHOULD GRANT A REHEARING EN BANC TO RECTIFY CRITICAL ERRORS THAT WILL IMPACT DESIGN PATENT ENFORCEMENT ..... 3

II. THE TEST FOR DESIGN PATENT INFRINGEMENT IS BASED ON SIMILARITIES, NOT DIFFERENCES ..... 4

A. The touchstone of design patent infringement is similarity of appearance ..... 4

B. "Dissimilarity" was improperly used here as a substitute for Gorham's ordinary observer test ..... 6

III. DESIGN PATENT CLAIM CONSTRUCTION SHOULD BE AN AID TO A VISUAL COMPARISON, NOT A FUNCTIONALITY-BASED FEATURE DISSECTION ..... 7

A. A properly construed design patent claim must address the appearance of the overall design as a whole ..... 7

B. Dissection of design features reverts to unsound analyses and a "point of novelty" approach the Court rejected long ago ..... 9

IV. TO THE EXTENT A FUNCTIONALITY TEST IS APPLIED, IT SHOULD BE GROUNDED IN DESIGN PATENT LAW, NOT TRADEMARKS ..... 10

V. CONCLUSION ..... 12

# TABLE OF AUTHORITIES

## CASES

*Avia Grp. Int'l, Inc. v. L.A. Gear Cal., Inc.*,
853 F.2d 1557 (Fed. Cir. 1988) ....................9, 10

*Berry Sterling Corp. v. Pescor Plastics, Inc.*,
122 F.3d 1452 (Fed. Cir. 1997) ....................11

*Colida v. Nokia, Inc.*,
347 F. App'x 568 (Fed. Cir. 2009) ....................6

*Contessa Food Prods., Inc. v. Conagra, Inc.*,
282 F.3d 1370 (Fed. Cir. 2002) ....................8

*Door-Master Corp. v. Yorktowne, Inc.*,
256 F.3d 1308 (Fed. Cir. 2001) ....................8

*Egyptian Goddess, Inc. v. Swisa, Inc.*,
543 F.3d 665 (Fed. Cir. 2008) ....................6

*Elmer v. ICC Fabricating, Inc.*,
67 F.3d 1571 (Fed. Cir. 1995) ....................8

*Ethicon Endo-Surgery, Inc. v. Covidien, Inc.*,
796 F.3d 1312 (Fed. Cir. 2015) ....................9, 12

*Gorham Mfg. Co. v. White*,
81 U.S. 511 (1871).................... 4, 5, 8

*L.A. Gear, Inc. v. Thom McAn Shoe Co.*,
988 F.2d 1117 (Fed. Cir. 1993) ....................11

*PHG Techs., LLC v. St. John Cos.*,
469 F.3d 1361 (Fed. Cir. 2006) ....................12

*Range of Motion Prods., LLC v. Armaid Co. Inc.*,
166 F.4th 981 (Fed. Cir. 2026) .................... 4, 6, 8

*Seiko Epson Corp. v. Nu–Kote Int'l, Inc.*,
190 F.3d 1360 (Fed. Cir. 1999) ....................11

## TABLE OF AUTHORITIES *(continued)*

Page(s)

*Sport Dimension, Inc. v. Coleman Co.*,
820 F.3d 1316 (Fed. Cir. 2016) ....................................................................8, 11

## INTEREST OF THE AMICUS CURIAE

The Industrial Designers Society of America ("IDSA") is one of the oldest and largest membership organizations for industrial designers. *See Our Story*, IDSA, https://www.idsa.org/about-idsa/our-story. IDSA is a non-profit association dedicated to improving knowledge of industrial design and representing the profession to businesses, the government, and the public at large. IDSA has thousands of members across the United States and worldwide in Student Chapters, Professional Chapters, and Special Interest Sections. *See About IDSA*, IDSA, https://www.idsa.org/about-idsa/. IDSA also sponsors the International Design Excellence Awards® (IDEA) annually, one of the most prestigious and competitive industrial design competitions in the world.

IDSA has a primary interest in the outcome of this matter based on its longstanding commitment to design rights issues and design innovation in general. IDSA has a strong interest in offering advice to the Court to ensure that design patent infringement analysis be conducted in a way that fairly and adequately protects industrial designers and innovative companies. IDSA has no personal stake in any of the parties to this litigation or the specific results of this case. IDSA respectfully submits this brief for the benefit of the Court and in specific support of neither party.

## STATEMENT OF AUTHORSHIP AND FUNDING

Pursuant to Federal Rules of Appellate Procedure 29(a)(4)(E), amicus curiae Industrial Designers Society of America states that only it and its counsel authored this brief, and no part of this brief was authored by counsel to a party. No party or counsel for a party made a monetary contribution intended to fund the preparation or submission of this brief. No person other than amicus curiae and its counsel made such a monetary contribution to its preparation or submission.

# ARGUMENT

## I. THE COURT SHOULD GRANT A REHEARING EN BANC TO RECTIFY CRITICAL ERRORS THAT WILL IMPACT DESIGN PATENT ENFORCEMENT

This case should be reheard, *en banc*, to correct three errors and to assure certainty and predictability in design patent litigation. First, the majority opinion and the district court below improperly focus the design patent infringement inquiry on differences in design, instead of overall similarity. The Supreme Court standard for design patent infringement focuses on overall similarity.

Second, the majority opinion endorses the district court's improper functional dissection of the claimed design. Because the relevant infringement and validity inquiries focus on the visual impression of the claimed design as a whole, dissection is improper, as this Court's recent precedents establish.

Finally, the Court should clarify that the standard for assessing functionality of a claimed design focuses on the existence of alternative designs. Notwithstanding this Court's previous guidance, the district court relied on trademark functionality factors that raise an illogically high bar for design patents relating to useful articles of manufacture.

The combined impact of these errors will make design patent law less predictable and more complicated and expensive to navigate. They hurt design creators and result in uncertainty for patentees and would-be infringers alike.

Granting a Rehearing *en banc* to rectify these errors is essential to steer the design patent system on course.

## II. THE TEST FOR DESIGN PATENT INFRINGEMENT IS BASED ON SIMILARITIES, NOT DIFFERENCES

### A. The touchstone of design patent infringement is similarity of appearance

The majority's opinion in this case deviates from *Gorham Mfg. Co. v. White*, 81 U.S. 511 (1871), by converting the infringement inquiry from a holistic comparison of overall appearances into an exercise in identifying differences between patented and accused designs. *Range of Motion Prods., LLC v. Armaid Co. Inc.*, 166 F.4th 981, 992 (Fed. Cir. 2026). Looking for differences in designs, rather than assessing their overall similarity, recent decisions of this Court—including this case and the *North Star Tech. Int'l Ltd. v. Latham Pool Prods., Inc.*, No. 2023-2138 (Fed. Cir. 2025), pool-product case—have affirmed summary judgments of non-infringement for patented and accused designs that were visually more similar to one another than even the flatware designs at issue in *Gorham*, as the comparison table below makes plain:

| Case | Result | Patented design | Accused product |
|---|---|---|---|
| *Gorham* | Supreme Court reversed finding of non-infringement |  |  |
| *North Star* | Federal Circuit affirmed summary determination of non-infringement |  |  |
| *Range of Motion* | Federal Circuit affirmed summary determination of non-infringement |  |  |

As shown above, the patented and accused designs in *Gorham* were not identical and observable differences existed. Yet the Supreme Court reversed a finding of non-infringement because an ordinary observer, "giving such attention as a purchaser usually gives," would be deceived into believing the designs were the same. *Gorham*, 81 U.S. at 528. The operative question established by the Supreme Court is whether there are similarities, not differences.

As Chief Judge Moore notes, when properly assessing overall visual similarity, a reasonable jury easily could have found infringement in this case. *Range of Motion*, 166 F.4th at 993-94 (Moore, C.J. dissenting). But the district court's and majority's focus on design differences, not similarity, deviates from *Gorham* and creates a methodological error. *Id.* at 991-93. An *en banc* rehearing is necessary to remedy this methodological problem.

### B. "Dissimilarity" was improperly used here as a substitute for *Gorham's* ordinary observer test

The difference-based approach applied in this case finds its foothold in the "plainly dissimilar" language from *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665 (Fed. Cir. 2008) (*en banc*). That concept, however, has been stretched far beyond its original purpose. The *Egyptian Goddess* decision responded to a pattern of meritless suits in which a single patentee sued nearly every manufacturer of clamshell phones regardless of how their products actually looked. *See Colida v. Nokia, Inc.*, 347 F. App'x 568 (Fed. Cir. 2009).

"Plainly dissimilar" was a narrow gatekeeping mechanism to dispose of cases where no reasonable observer could perceive any substantial similarity in appearance. It addresses a banana versus orange scenario, where two things might categorically be the same but have no meaningful visual relationship such that there is no point in comparing the designs to prior art or to further evaluate their overall

similarity. "Plainly dissimilar" was not a directive to bypass application of the ordinary observer infringement test and find non-infringement just because differences between patented and accused designs exist.

Virtually every contested design case involves some observable differences. But cataloging differences is not the test. To the contrary, the question *Gorham* demands is whether an ordinary observer would find the overall visual appearance of the patented and accused designs to be substantially the same. Under *Gorham* and *Egyptian Goddess*, if the designs are not "plainly dissimilar" in the sense of a banana and an orange, design patent infringement will ordinarily be a question for the factfinder.

This Court should grant rehearing to restore "plainly dissimilar" to its proper role described in *Egyptian Goddess*, and to foreclose its use as a differences-based infringement test that deviates from *Gorham's* focus on overall similarity.

## III. DESIGN PATENT CLAIM CONSTRUCTION SHOULD BE AN AID TO A VISUAL COMPARISON, NOT A FUNCTIONALITY-BASED FEATURE DISSECTION

### A. A properly construed design patent claim must address the appearance of the overall design as a whole

Whether a design patent claim is novel, non-obvious, or ornamental requires consideration of the design patent claim <u>*as a whole*</u>, not its dissected parts. *See, e.g.*, *Sport Dimension, Inc. v. Coleman Co.*, 820 F.3d 1316, 1320 (Fed. Cir. 2016);

*Contessa Food Prods., Inc. v. Conagra, Inc.*, 282 F.3d 1370, 1376 (Fed. Cir. 2002), *abrogated on other grounds by Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665 (Fed. Cir. 2008); *Door-Master Corp. v. Yorktowne, Inc.*, 256 F.3d 1308, 1312 (Fed. Cir. 2001); *Elmer v. ICC Fabricating, Inc.*, 67 F.3d 1571, 1577 (Fed. Cir. 1995). Design Patent infringement compares the overall appearance of the patented design to the accused product. *Gorham*, 81 U.S. at 528. Yet claim dissection (i.e., what happened in this case in the excluding or excising of selected design patent claim elements) is the opposite of focusing on the appearance of a design patent claim as a whole.

This Court addressed the issue directly in *Sport Dimension.* There, the Court harmonized its previous decisions in *OddzOn, Richardson*, and *Ethicon*, explaining that it has never endorsed "entirely eliminat[ing] a structural element from [a] claimed ornamental design, even though that element also served a functional purpose," and held that it is error under the Court's precedents to "eliminate[] whole aspects of [a] claimed design." *Sport Dimension,* 820 F.3d at 1321–22. But the majority opinion in this case effectively approved a claim construction that dissected and excised claimed features of an ornamental design. *See Range of Motion*, 166 F.4th at 988–90. *En banc* rehearing is necessary to clarify what multiple panels have attempted in the past, namely, to establish that design patent claims are evaluated based on their appearance as a whole and cannot be dissected.

### B. Dissection of design features reverts to unsound analyses and a "point of novelty" approach the Court rejected long ago

Feature dissection cannot be correct because it reduces presumptively valid design patents to having no protectable, or changed and unintended, scope. The overall aesthetic formed by the combination of a design's elements is often where ornamentality resides; stripping those elements away risks destroying the very thing the patent protects. *See Avia Grp. Int'l, Inc. v. L.A. Gear Cal., Inc.*, 853 F.2d 1557, 1563 (Fed. Cir. 1988), *abrogated on other grounds by Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665 (Fed. Cir. 2008).

The problem is illustrated in *Ethicon*, where a district court's claim construction excised as "functional" the claimed design's trigger, torque knob, and activation button, leaving the claims with no scope whatsoever. This Court reversed, holding that the asserted design patents covered the appearance of "the particular ornamental designs of those underlying elements," including the "specific relative positions and orientations" of the claimed combinations of elements. *Ethicon Endo-Surgery, Inc. v. Covidien, Inc.*, 796 F.3d 1312, 1334–35 (Fed. Cir. 2015).

Extending the logic of *Ethicon*, dissection of a claimed design is unsound because it changes a presumptively valid claim and changes what the named inventor(s) actually patented. Dissection creates a new and unintended design claim. Notwithstanding that the original claim was presumed valid, functional dissection at

claim construction transmogrifies the patentee's claim without any benefit of a heightened clear-and-convincing evidentiary standard.

Dissection is also unsound because it harkens back to a problem that plagued the design patent system for 25 years: the point of novelty test. While good intentioned, the point of novelty test resulted in the dissection and exclusion of non-novel features from claimed designs and required a separate infringement test directed to the remaining novel feature or features (i.e., the point of novelty). The test robbed design patents of presumptively valid scope, created significant and costly gamesmanship in litigation, and did not get fixed until *Egyptian Goddess*.

Functional dissection presents the same problem in a different form; the Court should grant rehearing to dispatch functional dissection and afford design innovators (and would-be infringers) certainty about the scope of patented designs.

## IV. TO THE EXTENT A FUNCTIONALITY TEST IS APPLIED, IT SHOULD BE GROUNDED IN DESIGN PATENT LAW, NOT TRADEMARKS

Because design patents protect the appearance of useful articles, it is inescapable that parts of patented designs will serve a function. Thus, this Court established a design patent test for functionality that asks whether a design is dictated by the article's function, meaning whether no alternative design could perform the same function. *See Avia Grp.*, 853 F.2d at 1563.

This Court has further explained that a design patent claim protects an article of manufacture that "necessarily serves a utilitarian purpose," and a design is functional only where its appearance is "dictated by" that purpose. *Sport Dimension*, 820 F.3d at 1320; *L.A. Gear, Inc. v. Thom McAn Shoe Co.*, 988 F.2d 1117, 1123 (Fed. Cir. 1993); *Seiko Epson Corp. v. Nu–Kote Int'l, Inc.*, 190 F.3d 1360, 1368 (Fed. Cir. 1999). "When there are several ways to achieve the function of an article of manufacture, the design of the article is more likely to serve a primarily ornamental purpose." *L.A. Gear*, 988 F.2d at 1123 (citations omitted).

The existence of a utility patent and marketing materials touting functional benefits does not alone satisfy this standard: the accused infringer must show by clear and convincing evidence that no alternative design could perform the same function. *See Rosco, Inc. v. Mirror Lite Co.*, 304 F.3d 1373, 1378–79 (Fed. Cir. 2002).

Yet, this Court has also injected into its design patent functionality analysis concepts derived from trademark functionality factors. In *Berry Sterling Corp. v. Pescor Plastics, Inc.*, 122 F.3d 1452, 1455–56 (Fed. Cir. 1997), a panel of this Court suggested that the alternative-design standard was one permissible consideration in assessing functionality of a design, and opened the door to considering trademark factors. Subsequent cases sometimes applied those trademark factors without critical

scrutiny. *See, e.g., PHG Techs., LLC v. St. John Cos.*, 469 F.3d 1361, 1366–67 (Fed. Cir. 2006).

Despite subsequent guidance in *Ethicon* that "the availability of alternative designs [is] an important—if not dispositive—factor" in assessing functionality of a patented design, 796 F.3d at 1329–30, the court below drew on factors imported from trademark non-functionality doctrine, asking whether the design was "solely ornamental." The record in this case, where hundreds of alternative arm configurations existed, evidences that the claimed design was not dictated by function and could not have been found functional under the design patent alternative designs standard.

The Court should grant an *en banc* rehearing to sever the unwarranted connection to trademark functionality doctrine that persists in design patent law and definitively establish that the availability of alternative designs is the controlling and dispositive factor in assessing functionality of a patented design.

## V. CONCLUSION

The Court should grant rehearing *en banc* to clarify that: (A) overall similarity is the test for design patent infringement and "plainly dissimilar" is a gatekeeping shortcut, not justification for cataloging differences; (B) to the extent verbal claim constructions are made for design patent claims, they must account for the overall

claimed design as a whole—they cannot result in functional dissection; and (C) the standard for assessing functionality of a claimed design focuses on the existence of alternative designs, not trademark factors.

Respectfully submitted,

Dated: April 10, 2026

/s/ Erik S. Maurer

Robert S. Katz
Sonia M. Okolie
BANNER & WITCOFF, LTD.
1100 13th Street, NW, Suite 1200
Washington, DC 20005
Telephone: (202) 824-3000

Erik S. Maurer
BANNER & WITCOFF, LTD.
71 S. Wacker Drive, Suite 3600
Chicago, IL 60606
Telephone: (312) 463-5000

*Attorneys for Amicus Curiae Industrial Designers Society of America*

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION

This brief complies with the relevant type-volume limitations of the Federal Rules of Appellate Procedure and the Federal Circuit Rules because it has been prepared using a proportionally spaced 14-point typeface and includes 2,349 words, excluding the portions exempted by rule.

Dated: April 10, 2026

/s/ Erik S. Maurer

Erik S. Maurer