**No. 2023-2427**

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FEDERAL CIRCUIT**

---

RANGE OF MOTION PRODUCTS, LLC,

*Plaintiff-Appellant*,

v.

ARMAID COMPANY INC.,

*Defendant-Appellee*.

---

On Appeal from the United States District Court
for the District of Maine
No. 1:22-cv-00091
Hon. Jon D. Levy

# BRIEF OF OAKE LAW OFFICE PLLC AS AMICUS CURIAE IN SUPPORT OF THE PETITION FOR REHEARING EN BANC

Robert G. Oake, Jr.
Oake Law Office, PLLC
700 S. Central Expressway, Suite 400
Allen, Texas 75013
Telephone: 214.207.9066
Facsimile: 469.519.5454
rgo@oake.com

Amicus Curiae

April 17, 2026

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

**Case Number** 2023-2427

**Short Case Caption** Range of Motion Products, LLC v. Armaid Company, Inc.

**Filing Party/Entity** Oake Law Office PLLC

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.

2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.

3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.

4. Please do not duplicate entries within Section 5.

5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes. Fed. Cir. R. 47.4(c).

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 04/17/2026

Signature: /s/ Robert G. Oake, Jr.

Name: Robert G. Oake, Jr.

| **1. Represented Entities.** Fed. Cir. R. 47.4(a)(1). | **2. Real Party in Interest.** Fed. Cir. R. 47.4(a)(2). | **3. Parent Corporations and Stockholders.** Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities. ☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities. ☑ None/Not Applicable |
| Oake Law Office PLLC | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐ Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| Robert G. Oake, Jr. | | |
| Oake Law Office PLLC | | |
| | | |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☐ Yes (file separate notice; see below) ☐ No ☑ N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

# TABLE OF CONTENTS

Page

CERTIFICATE OF INTEREST

TABLE OF CONTENTS .......................................................... i

TABLE OF AUTHORITIES.................................................... ii

INTEREST OF AMICUS CURIAE......................................... 1

INTRODUCTION AND SUMMARY OF ARGUMENT............... 2

ARGUMENT........................................................................ 3

1. The Petition Correctly Identifies the Inversion, But the Inversion Is Only Half of the Problem ........... 3

2. Emptying the Threshold Test of Its *Gorham* Context Strips Away the Calibration Mechanisms That Make the Test Workable.................................... 5

3. The Seventh Amendment Problem Runs Through the Same Fault Line......................................... 8

CONCLUSION..................................................................... 12

# TABLE OF AUTHORITIES


| Cases | Page(s) |
|---|---|
| *Arminak & Assocs. v. Saint-Gobain Calmar, Inc.*, 501 F.3d 1314 (Fed. Cir. 2007) ………………… | 5 |
| *Berry Sterling Corp. v. Pescor Plastics, Inc.*, 122 F.3d 1452 (Fed. Cir. 1997) ………………… | 9, 10, 11, 12 |
| *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665 (Fed. Cir. 2008) (en banc)………… | 2, 3, 5, 6, 8, 9, 11 |
| *Ethicon Endo-Surgery, Inc. v. Covidien, Inc.*, 796 F.3d 1312 (Fed. Cir. 2015) ………………… | 10 |
| *Gorham Mfg. Co. v. White*, 81 U.S. 511 (1871)……………………………… | *Passim* |
| *Hana Financial, Inc. v. Hana Bank*, 574 U.S. 418 (2015) ………………………. | 11 |
| *Markman v. Westview Instruments, Inc.*, 517 U.S. 370 (1996) ………………………. | 8, 10 |
| *North Star Tech. Int'l Ltd. v. Latham Pool Products, Inc.*, 2023-2138 (Fed. Cir. 2025) ………………… | 1, 3 |
| *Range of Motion Prods., LLC v. Armaid Co.*, 166 F.4th 981 (Fed. Cir. 2026) ………………… | 3, 5, 7, 9, 12 |
| *Richardson v. Stanley Works, Inc.*, 597 F.3d 1288 (Fed. Cir. 2010) ………………… | 9, 10 |
| *Shelcore, Inc. v. Durham Indus., Inc.*, 745 F.2d 621 (Fed. Cir. 1984) ………………… | 5 |
| *Smith v. Whitman Saddle Co.*, 148 U.S. 674 (1893) ……………………….. | 4 |

Page(s)

*Sport Dimension, Inc. v. Coleman Co.*,
820 F.3d 1316 (Fed. Cir. 2016) ..................... 10

*Tomkinson v. Willets Mfg. Co.*,
23 F. 895 (C.C.S.D.N.Y. 1884) ..................... 4

Rule

Fed. R. App. P. 29(a)(4)(E) .......................... 1

Other Authorities

Shoemaker, William D., Patents for Designs 305 (1929) 6

## INTEREST OF THE AMICUS CURIAE

Oake Law Office, PLLC is a law firm devoted to the practice of intellectual property law, with particular emphasis on design patent prosecution and litigation. The firm is owned by Robert G. Oake, Jr., an attorney admitted to practice before this Court, and who served as lead counsel for Egyptian Goddess, Inc. in *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665 (Fed. Cir. 2008) (en banc). He has a longstanding interest in the development of design patent law.

Oake Law Office, PLLC has appeared as amicus curiae in this Court in various cases involving design patent law, including *North Star Technology International Ltd. v. Latham Pool Products, Inc.*, No. 2023-2138 (Fed. Cir. 2025), where the undersigned's brief was cited in Chief Judge Moore's dissent in the decision now before the Court. Amicus has no stake in the outcome of this case beyond the coherent development of design patent doctrine.

Pursuant to Fed. R. App. P. 29(a)(4)(E), amicus states that no party's counsel authored this brief in whole or in part, and no party or party's counsel made a monetary contribution intended to fund the preparation or submission of this brief. No person other than amicus made such a monetary contribution. This brief is submitted pursuant to a motion for leave to file.

## INTRODUCTION AND SUMMARY OF ARGUMENT

The petition is correct that the panel's application of the plainly dissimilar gatekeeper inverts the *Gorham* inquiry by training the factfinder on differences rather than on overall sameness. Amicus writes to deepen rather than qualify the petition. The inversion that follows from adding "dis" to "similar" is only half the problem. The other half is that "similar" is not the test. *Gorham Manufacturing Co. v. White* announced a test of whether two designs are "substantially the same," 81 U.S. 511, 528 (1871), and that phrase is not interchangeable with "substantially similar." The difference matters because "substantially the same" anchors three calibration mechanisms, the ordinary observer, marketplace conditions, and the prior art, that make the *Gorham* test workable. Once the panel applies a threshold filter untethered from those mechanisms, it is not applying a streamlined *Gorham*. It is applying a different test.

This framing also strengthens the petition's Seventh Amendment argument. Graduated functionality assessments at claim construction invade the jury's province because they resolve the contextual questions that *Gorham* commits to the factfinder as part of the single holistic comparison. The proper limit on the judicial role is the one drawn in *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665 (Fed. Cir. 2008). A court may only categorically identify features that are

"purely functional," but it may not weigh the ornamental contribution of features that combine function with ornament. That weighing is reserved to the jury.

Amicus respectfully urges rehearing, elimination of the plainly dissimilar gatekeeper, restoration of "substantially the same" as the operative phrase, and confinement of functionality at claim construction to the narrow categorical determination *Egyptian Goddess* authorized.

## ARGUMENT

### 1. The Petition Correctly Identifies the Inversion, But the Inversion Is Only Half of the Problem.

The petition explains why "plainly dissimilar" is not a neutral restatement of *Gorham v. White,* 81 U.S. 511 (1871). Asking whether designs are plainly dissimilar trains the observer on points of divergence; asking whether they are "substantially the same" trains the observer on overall impression. The dissent references empirical work submitted to this Court in *North Star Tech. Int'l Ltd. v. Latham Pool Products, Inc.*, 2023-2138 (Fed. Cir. 2025) confirming the point. When survey respondents were shown designs from cases where infringement had been affirmed and asked whether those designs were "plainly dissimilar," over sixty percent answered yes. *Range of Motion Prods., LLC v. Armaid Co.*, 166 F.4th 981, 996 (Fed. Cir. 2026) (citing *North Star* at 3-4, Dkt. 100 at 1-4 (Institute for Design Science & Public Policy Amicus Brief)). The results illustrate the effect framing can have on outcome as documented in the psychological literature. *Id.*

The petition is right, and an additional point bears development. The problem did not begin with the word “dissimilar.” It began one step earlier, with the quiet substitution of “similar” for “the same.” *Gorham*’s phrase is “substantially the same.” That phrase contains a flexible modifier, “substantially,” applied to a fixed reference point, “the same.” “Substantially similar,” by contrast, layers a flexible modifier on top of a concept, “similar,” that is already inherently relative and that presupposes difference. The very act of framing the comparison in terms of similarity concedes that differences exist and invites the factfinder to sort features into shared and unshared categories. The negation of that phrase, “plainly dissimilar,” accelerates a fragmenting tendency that already was built in.

*Gorham* itself used the word “similar,” but only descriptively, never as part of the rule formulation. When the Supreme Court stated the governing standard, it returned consistently to sameness: “sameness of appearance,” “sameness of effect upon the eye,” whether two designs are “substantially the same.” 81 U.S. at 526-528.

Since *Gorham*, some decisions have preserved “substantially the same” or “sameness of appearance,” *see, e.g., Smith v. Whitman Saddle Co.*, 148 U.S. 674, 680 (1893), while others have treated “substantially similar” as interchangeable or have restated the rule in those terms. *See Tomkinson v. Willets Mfg. Co.,* 23 F. 895, 896 (C.C.S.D.N.Y. 1884) (stating the rule as whether "to the eye of an ordinary

person the two are substantially similar"); *Shelcore, Inc. v. Durham Indus., Inc.,* 745 F.2d 621, 628-629 (Fed. Cir. 1984) (reciting *Gorham*'s "substantially the same" standard while using "substantially similar" as an interchangeable rule statement). That drift appeared early and persists in more recent decisions, including *Arminak & Associates v. Saint-Gobain Calmar, Inc.,* 501 F.3d 1314, 1324 (Fed. Cir. 2007) (stating "the question to be addressed in applying the ordinary observer test is whether the ordinary observer would be deceived by the accused design because it is substantially similar to the patented design.") and *Range of Motion, supra*, at 993 (majority opinion); *id.* at 994 (dissenting opinion).

This is not mere semantics. The remedy the petition seeks would be complete if this Court reaffirms the "substantially the same" phrase the Supreme Court used and clarifies that "substantially similar" should not be treated as an alternative statement of the rule. If this Court eliminates "plainly dissimilar" but leaves "substantially similar" in place as a restatement of *Gorham*, the difference-hunting orientation will persist.

### 2. Emptying the Threshold Test of Its *Gorham* Context Strips Away the Calibration Mechanisms That Make the Test Workable

*Gorham* does not leave the word "substantially" vague. It gives the word a precise, operational meaning: two designs are "substantially the same" when "the resemblance is such as to deceive" an ordinary observer, "inducing him to purchase one supposing it to be the other." 81 U.S. at 528. The measure of

"substantially" is not quantitative. It is not a percentage of shared features or a score on a similarity scale. It is consequential. It asks whether the degree of sameness is enough to produce a specific outcome: the deception of a purchaser. If the resemblance deceives, the designs are substantially the same. If it does not, they are not.

The phrase "substantially the same" carries three calibration mechanisms. First, the ordinary observer is not a fixed figure but one whose sophistication varies with the market for the product at issue. Second, the comparison should be made under the conditions in which purchasing occurs, "such attention as a purchaser usually gives," rather than under a minute side by side comparison. *See* William D. Shoemaker, *Patents for Designs* 305 (1929) (collecting cases). Third, as *Egyptian Goddess* later made explicit, the observer is one who is "familiar with" the prior art; the prior art is embedded in the very definition of the observer through whose eyes the comparison is made. 543 F.3d at 677-78.

Taken together, these mechanisms give *Gorham*'s "substantially the same" test a framework that is precise and flexible. It is precise because it points to a definable outcome: deception. It is flexible because the threshold for deception shifts with the identity of the observer, the conditions of purchase, and the state of the prior art. And it keeps the inquiry anchored in holistic visual impression rather than feature-by-feature decomposition.

The plainly dissimilar gatekeeper strips all three of those mechanisms away. A court conducting a threshold dissimilarity screen does not pause to identify the relevant ordinary observer, consider the conditions under which a purchaser would encounter the accused design, or examine the prior art in which the observer is steeped. It looks at two images and decides, as a matter of judicial impression, whether they are too different for any reasonable juror to find infringement. That is not the *Gorham* test. And because the gatekeeper precedes any three-way prior art comparison, it produces its outcome at the very stage at which the *Gorham* calibration mechanisms would otherwise constrain it.

Chief Judge Moore's dissent is correct that courts should "*always*" compare the claimed and accused designs considering the prior art, with no special exception for designs that appear plainly dissimilar at first glance. 166 F.4th at 1000 (emphasis in original). Amicus adds that this is so for a reason more fundamental than administrability. The prior art cannot be set aside at the threshold stage because the ordinary observer cannot be set aside, and the observer is defined, in part, by the prior art. A court that compares designs without the prior art has not simplified *Gorham*. It has replaced the *Gorham* observer with itself.

The flexibility that courts intuitively seek by softening "the same" to "similar" is already present in *Gorham*, but it resides in the mechanisms, not in the operative phrase. Pairing a similarity-framed standard with a default side-by-side

comparison method does not give effect to that flexibility. It replaces the holistic, marketplace-grounded comparison the mechanisms produce with a subjective difference-hunting exercise the mechanisms were designed to prevent.

3. The Seventh Amendment Problem Runs Through the Same Fault Line

The petition argues that the panel's treatment of functionality at claim construction intrudes on the jury's factfinding role. Amicus agrees and writes to identify the limiting principle the argument requires. *Egyptian Goddess* supplies the answer, recognizing that a court may helpfully "distinguish[] between those features of the claimed design that are ornamental and those that are *purely* functional." 543 F.3d at 680 (emphasis added).

The word "purely" is doing decisive work. Identifying a feature as purely functional is a categorical determination. The feature's appearance is entirely dictated by function, with no ornamental contribution, and therefore falls outside the scope of protection as a matter of law. That determination is analogous to the legal ruling in *Markman v. Westview Instruments, Inc*., 517 U.S. 370 (1996), authorized for utility patents.

Getting that determination right requires distinguishing what function can dictate. Function may dictate that an element must exist in the design, for example that a surgical device must have a trigger. Function also may dictate how elements must be arranged, as a multi-function tool must have its hammer head at one end

and its pry bar at the other for each to work. Function does not ordinarily dictate the shape of those elements, the contour of the hammer head, the profile of the jaw, the curvature of a U-shaped trigger. Those shapes are the designer's choice from among many possible shapes, and they are what design patent law protects.

A court addressing functionality at claim construction may set aside the functional necessity of an element's existence and, where applicable, its arrangement when they are purely functional. The ornamental shapes stay in. That is what *Richardson v. Stanley Works, Inc.*, 597 F.3d 1288 (Fed. Cir. 2010), did when it set aside the required configuration of hammer, pry bar, and jaw while retaining their particular ornamental shapes.

The decision below departed from that approach. It did not find that the clamshell arms of the patented device were "purely functional." Rather, it approved the district court's conclusion that the arms were functional despite the district court's acknowledgement that "other features 'appear to be largely ornamental,' such as 'the thick ridged outline' of the design (*which includes the arms*)." 166 F.4th at 989 (emphasis added). The decision below weighed the factors from *Berry Sterling Corp. v. Pescor Plastics, Inc.*, 122 F.3d 1452, 1456 (Fed. Cir. 1997) to conclude that the shape of the arms was functional. That is not the categorical "purely functional" determination *Egyptian Goddess* authorized. It is a graduated, fact-intensive judgment about how much ornamental weight an element

contributes to the overall visual impression, and graduated judgments about visual impression are the core of what *Gorham* commits to the jury.

The misapplication of *Berry Sterling* at claim construction is central to the error. Those factors were developed to answer a different question in a different posture: whether a concededly useful article is so dictated by function that the design as a whole should not receive protection at all. That is a validity inquiry. Transplanted into claim construction, where validity is assumed and the only question is how much ornamental weight a particular feature contributes, they produce the same kind of graduated, validity-oriented outputs they were designed to produce in their original setting. The doctrinal lineage confirms the mismatch: *Richardson* did not cite *Berry Sterling*; *Ethicon Endo-Surgery, Inc. v. Covidien, Inc.,* 796 F.3d 1312, 1329–31 (Fed. Cir. 2015) discussed the factors only in the validity context, as "useful guidance" in determining whether a claimed design is "primarily functional" and therefore invalid. *Sport Dimension, Inc. v. Coleman Co.,* 820 F.3d 1316, 1322 (Fed. Cir. 2016) imported those factors into claim construction in a single sentence without elaboration.

*Markman*'s institutional-competence rationale confirms the point. The Supreme Court authorized judicial claim construction because it is textual interpretation, a task judges do "better than jurors." 517 U.S. at 388. Design patent claims are not text; they are drawings. The Court has cautioned in an analogous

context that making "factual judgment[s]" about visual impression is "not 'one of those things that judges often do' better than jurors." *Hana Financial, Inc. v. Hana Bank*, 574 U.S. 418, 425 n.2 (2015).

The Court should reaffirm what *Egyptian Goddess* said: claim construction may address whether features are purely functional, and no more. The graduated assessment of how much ornamental weight a feature contributes belongs with the jury, as part of the holistic comparison *Gorham* demands. The proper tool for the categorical claim-construction question is the alternative designs inquiry asked in isolation: could this element look different and still work? If yes, the particular shape stays in the infringement comparison at full weight. *Berry Sterling* includes alternative designs among its factors but subordinates that inquiry to a balancing test that weighs it against utilitarian advantage, concomitant utility patents, and advertising touts. That balancing produces the graduated outputs appropriate to validity, where it originated, and incompatible with the categorical determination claim construction requires.

The opinion below does address the alternative designs issue and concludes that a prior art patented design is not a feasible alternative design. However, its analysis is incomplete. The opinion compares the claimed and prior art design patent titles (Body Massaging Apparatus versus Limb Massager) and states the two titles "suggest[] that the devices serve different purposes and have different

functional capabilities." *Id.* at 990. The opinion then concludes that the ambiguity about whether the shape of the arms is "solely ornamental" allows review of the extrinsic *Berry Sterling* factors. But determining whether the shape of the arms is "solely ornamental" inverts the test. The question should be whether the shape of the arms is "purely functional" as a matter of law under the alternative designs approach, and the opinion never squarely addresses that issue. Indeed, the opinion's concession about ambiguity on the alternative designs issue suggests the issue cannot be determined as a matter of law during claim construction based on the evidence presented.

The Seventh Amendment problem and the plainly dissimilar problem are not two separate errors. They are two manifestations of a single drift away from *Gorham*'s holistic, jury-administered comparison toward a pair of judicial gatekeepers, one verbal and one functional, that resolve design patent cases before the jury ever sees them. The functionality doctrine, as currently administered at claim construction, is the other half of the removal of the jury that Chief Judge Moore identified in her dissent. 166 F.4th at 999.

## CONCLUSION

This Court should grant the petition for rehearing en banc. This Court should eliminate the plainly dissimilar gatekeeper, restore *Gorham*'s actual phrase, "substantially the same," as the only operative standard, require that the prior art

and other *Gorham* calibration mechanisms remain in place at every stage of the infringement analysis, and confine claim construction's role with respect to functionality to the categorical identification of purely functional features that *Egyptian Goddess* authorized. These corrections are the petition's logical extension and would restore the jury to the factfinding role *Gorham* and the Seventh Amendment require.

Respectfully submitted,

/s/ Robert G. Oake, Jr.
Robert G. Oake, Jr.
Oake Law Office, PLLC
700 S. Central Expressway, Suite 400
Allen, Texas 75013
Telephone: 214.207.9066
Facsimile: 469.519.5454
rgo@oake.com

Attorney for Amicus Curiae
Oake Law Office, PLLC

April 17, 2026

FORM 30. Certificate of Service

Form 30
July 2020

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF SERVICE

**Case Number** 2023-2427

**Short Case Caption** Range of Motion Products, LLC v. Armaid Company, Inc.

**NOTE:** Proof of service is only required when the rules specify that service must be accomplished outside the court's electronic filing system. See Fed. R. App. P. 25(d); Fed. Cir. R. 25(e). Attach additional pages as needed.

I certify that I served a copy of the foregoing filing on 04/17/2026

by ☐ U.S. Mail ☐ Hand Delivery ☐ Email ☐ Facsimile
☑ Other: CM/ECF

on the below individuals at the following locations.

| Person Served | Service Location (Address, Facsimile, Email) |
|---|---|
| All counsel of record | Court's CM/ECF System |
| | |
| | |
| | |
| | |

☐ Additional pages attached.

Date: 04/17/2026

Signature: /s/ Robert G. Oake, Jr.

Name: Robert G. Oake, Jr.

Save for Filing

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS

**Case Number:** 2023-2427

**Short Case Caption:** Range of Motion Products, LLC v. Armaid Company, Inc.

**Instructions:** When computing a word, line, or page count, you may exclude any items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

- ☑ the filing has been prepared using a proportionally-spaced typeface and includes 2,599 words.
- ☐ the filing has been prepared using a monospaced typeface and includes ________ lines of text.
- ☐ the filing contains ________ pages / ________ words / ________ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. ________).

Date: 04/17/2026

Signature: /s/ Robert G. Oake, Jr.

Name: Robert G. Oake, Jr.

Save for Filing