**2023-2427**

# United States Court of Appeals for the Federal Circuit

RANGE OF MOTION PRODUCTS, LLC,

*Plaintiff-Appellant,*

– v. –

ARMAID COMPANY INC.,

*Defendant-Appellee.*

*On Appeal from the United States District Court for the District of Maine in Case No. 1:22-cv-00091-JDL, Chief Judge Jon D. Levy*

## BRIEF OF *AMICUS CURIAE* AMERICAN INTELLECTUAL PROPERTY LAW ASSOCIATION IN SUPPORT OF THE COMBINED PETITION FOR REHEARING AND REHEARING *EN BANC*

SALVATORE ANASTASI,
*President*
AMERICAN INTELLECTUAL PROPERTY LAW ASSOCIATION
BARLEY SNYDER
Two Great Valley Parkway, Suite 110
Malvern, Pennsylvania 19355
(610) 889-3699
sanastasi@barley.com

CHRISTOPHER V. CARANI
PHILIPP RUBEN
*Counsel of Record*
MCANDREWS, HELD & MALLOY, LTD.
500 West Madison Street, 34th Floor
Chicago, Illinois 60661
(312) 775-8000
ccarani@mcandrews-ip.com
pruben@mcandrews-ip.com

*Counsel for Amicus Curiae American Intellectual Property Law Association*

APRIL 17, 2026

COUNSEL PRESS (800) 4-APPEAL • (625152)

FORM 9. Certificate of Interest

Form 9 (p. 1)
March 2023

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

**Case Number** 2023-2427

**Short Case Caption** Range of Motion Products, LLC v. Armaid Company Inc.

**Filing Party/Entity** American Intellectual Property Law Association

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.
2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.
3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.
4. Please do not duplicate entries within Section 5.
5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes. Fed. Cir. R. 47.4(c).

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 04/17/2026

Signature: /s/ Christopher V. Carani

Name: Christopher V. Carani

| **1. Represented Entities.** Fed. Cir. R. 47.4(a)(1). | **2. Real Party in Interest.** Fed. Cir. R. 47.4(a)(2). | **3. Parent Corporations and Stockholders.** Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities. ☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities. ☑ None/Not Applicable |
| American Intellectual Property Law Association | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐ Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☑ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |
| | | |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☐ Yes (file separate notice; see below) ☐ No ☑ N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases.** Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

# TABLE OF CONTENTS

CERTIFICATE OF INTEREST ........ i

TABLE OF CONTENTS ........ iv

TABLE OF AUTHORITIES ........ vii

STATEMENT OF INTEREST OF *AMICUS CURIAE* ........ 1

BACKGROUND ........ 2

SUMMARY OF ARGUMENT ........ 4

ARGUMENT ........ 5

I. *EN BANC* REVIEW IS WARRANTED TO FORECLOSE ANY SEPARATE "PLAINLY DISSIMILAR" PRE-TEST FOR DESIGN PATENT INFRINGEMENT AND TO CONFIRM THAT *GORHAM*'S ORDINARY OBSERVER TEST GOVERNS ........ 5

A. THE "PLAINLY DISSIMILAR" PRE-TEST HAS BECOME AN IMPROPER FREESTANDING THRESHOLD INQUIRY THAT INVERTS *GORHAM*'S SIMILARITY STANDARD ........ 5

B. THE "PLAINLY DISSIMILAR" PRE-TEST UNTETHERS THE INFRINGEMENT ANALYSIS FROM THE PRIOR ART ........ 6

C. THE "PLAINLY DISSIMILAR" PRE-TEST DISPLACES THE FACT-FINDER ........ 7

II. *EN BANC* REVIEW IS NEEDED TO MAKE CLEAR THAT CLAIM CONSTRUCTION MAY NOT BE USED TO EXCLUDE ANY *VISUAL* PORTIONS OF A CLAIMED DESIGN ........ 8

A. DESIGN PATENTS CONFER AN EXCLUSIVE RIGHT TO THE DESIGN *AS CLAIMED*, NOT A JUDICIALLY NARROWED VERSION OF THAT DESIGN ........ 9

B. NOVELTY AND ORNAMENTALITY ARE DESIGN-LEVEL VALIDITY QUESTIONS FOR THE FACTFINDER, NOT FEATURE-BY-FEATURE CLAIM CONSTRUCTION ISSUES FOR THE COURT ..... 12

C. CLAIM CONSTRUCTION MAY DISTINGUISH UNDERLYING FUNCTIONAL ATTRIBUTES OR GENERAL CONCEPTS, BUT MAY NOT EXCLUDE ANY *VISUAL* PORTIONS OF THE OVERALL CLAIMED DESIGN ..... 13

CONCLUSION ..... 15

CERTIFICATE OF COMPLIANCE ..... 16

# TABLE OF AUTHORITIES

## CASES

*Crocs, Inc. v. Int'l Trade Comm'n*,
598 F.3d 1294 (Fed. Cir. 2010) ....................14

*Egyptian Goddess, Inc. v. Swisa, Inc.*,
543 F.3d 665 (Fed. Cir. 2008) (*en banc*) .................... passim

*Elmer v. ICC Fabricating, Inc.*,
67 F.3d 1571 (Fed. Cir. 1995) ....................9

*Ethicon Endo-Surgery, Inc. v. Covidien, Inc.*,
796 F.3d 1312 (Fed. Cir. 2015) ....................11

*Gorham v. White*,
81 U.S. 511 (1871).................... passim

*In re Blum*,
374 F.2d 904 (C.C.P.A. 1967) ....................9

*Kohler Co. v. Signature Plumbing Specialties LLC*,
No. 23-cv-9686 (AS), 2024 U.S. Dist. LEXIS 215096 (S.D.N.Y. Nov. 25, 2024) ....................6

*Oddzon Prods. v. Just Toys, Inc.*,
122 F.3d 1396 (Fed. Cir. 1997) .................... 12, 14

*Richardson v. Stanley Works, Inc.,* 597 F.3d 1288 (Fed. Cir. 2010)................ 12, 14

*Rosco, Inc. v. Mirror-Lite Co.*,
304 F.3d 1373 (Fed. Cir. 2002) .................... 12, 13

*Shunock v. Apple, Inc.*, 1:23-cv-08598, 2026 U.S. Dist. LEXIS 63095,
(S.D.N.Y. March 25, 2026) ....................6

*Sport Dimension, Inc. v. Coleman Co.*,
820 F.3d 1316 (Fed. Cir. 2016) ....................11

**STATUTES**

35 U.S.C. § 171 .......................................................................... 4, 8, 13, 14

**OTHER AUTHORITIES**

Christopher V. Carani, *All or Nothing at All: Design Patent's Ornamentality Requirement and the Failings of Feature Filtration*, 36 Berkeley Tech. L.J. 213 (2021) ..........................................................8

Jason J. Du Mont & Mark D. Janis, *Functionality in Design Protection Systems*, 19 J. Intell. Prop. L. 261 (2012) ..........................................................8

## STATEMENT OF INTEREST OF *AMICUS CURIAE*

The American Intellectual Property Law Association ("AIPLA") is a national bar association representing the interests of approximately 6,500 members including a diverse spectrum of individuals, companies, and institutions involved directly or indirectly in the practice of utility patent, design patent, trade secret, trademark, and copyright law, as well as other fields of law relating to intellectual property.

AIPLA has no stake in either of the parties to this litigation or in the result of this case. AIPLA's only interest is in seeking correct and consistent interpretation of the law as it relates to intellectual property issues.[1]

[1] AIPLA certifies that this brief was not authored in whole or part by any party's counsel, and that no person or entity other than AIPLA or its counsel contributed financially to its preparation or submission. Pursuant to Rule 29(a)(3) and Federal Circuit Rule 40(i)(1), this brief is filed with a motion for leave, to which all parties have consented.

## **<u>BACKGROUND</u>**

Range of Motion Products, LLC ("RoM") sued Armaid Company, Inc. ("Armaid"), alleging infringement of D802,155 ("the '155 patent"), which claims an ornamental design for a body massaging apparatus, "as shown and described." Armaid sells its product under the name "Armaid2."



**'155 Patent**



**Armaid2**

Armaid moved for summary judgment of non-infringement. In its order, the district court undertook claim construction of the '155 patent, assessing the novelty and ornamentality of *individual* visual elements of the design. Appx17-18. The court concluded that certain visual elements were "beyond the scope of the claim" including the shape and size of the arms, the c-shape cut-outs in each the arms, the cylindrical shape of the two upper handles, the shape of the lower hinge apparatus, and the shape of the lower base. Appx20. The court followed

that "[t]hese functional features are not protected by the D'155 patent and, therefore, do not bear on the ordinary observer test." Appx26. The court then compared the few remaining elements, which it described as a "very narrow design," to the Armaid2 and concluded that the designs were "plainly dissimilar." Appx29. Granting summary judgment of non-infringement, the court noted that it arrived at its conclusion *without considering the prior art*. Appx29 ("I need not reach the prior art in light of my conclusion [of] "plainly dissimilar.")

RoM appealed both the claim construction and non-infringement determination. In a 2–1 decision, this Court affirmed, with Chief Judge Moore dissenting.

## SUMMARY OF ARGUMENT

AIPLA respectfully urges *en banc* review to address two recurring issues in design patent law that have expanded beyond their intended roles and now operate inconsistently with governing law.

First, the Court should clarify that the "plainly dissimilar" language from *dicta* in *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 678 (Fed. Cir. 2008) (*en banc*) does not provide a separate pre-test for design patent infringement. What began as a limited, efficiency-driven observation has evolved into a freestanding approach that reframes the inquiry in terms of dissimilarity, inverts *Gorham*'s focus on similarity, and untethers the analysis from the perspective of an ordinary observer *conversant with the prior art*. *Gorham v. White*, 81 U.S. 511, 528 (1871).

Second, the Court should make clear that claim construction cannot be used to exclude any *visual* portion of a claimed design, even if that portion is non-novel or non-ornamental; such practice departs from 35 U.S.C. § 171 and *Gorham*'s mandate that the design be assessed *as a whole*.

This case therefore presents an appropriate and necessary vehicle for *en banc* review.

# ARGUMENT

## I. *EN BANC* REVIEW IS WARRANTED TO FORECLOSE ANY SEPARATE "PLAINLY DISSIMILAR" PRE-TEST FOR DESIGN PATENT INFRINGEMENT AND TO CONFIRM THAT *GORHAM*'S ORDINARY OBSERVER TEST GOVERNS

In *Egyptian Goddess*, this Court abrogated the point-of-novelty test while confirming that the prior art remains central, as the ordinary observer is assumed to be "conversant with the prior art." *Egyptian Goddess,* 543 F.3d at 678. In *dicta*, however, the Court noted that in some instances the designs may be so "plainly dissimilar" or "sufficiently distinct"[2] that it is "clear without more" they are not "substantially the same." *Id*. The Court contrasted such cases with those that "will benefit from a comparison to the prior art." *Id*.

As here, courts have treated this passing observation on judicial efficiency as a basis for creating a separate pre-test for disposing design patent cases, sidestepping *Gorham*'s substantial similarity standard and ordinary observer test which presumes knowledge of the prior art.

### A. THE "PLAINLY DISSIMILAR" PRE-TEST HAS BECOME AN IMPROPER FREESTANDING THRESHOLD INQUIRY THAT INVERTS *GORHAM*'S SIMILARITY STANDARD

Under *Gorham*, the "controlling consideration" for infringement is the "effect of the whole design" and whether the accused and claimed designs are

[2] "Plainly dissimilar" and "sufficiently distinct" appear together without apparent distinction; this brief uses "plainly dissimilar" to encompass both.

"substantially the same." *Gorham*, 81 U.S. at 530. Yet, district courts, including the case at bar, have routinely read the "plainly dissimilar" passage from *Egyptian Goddess* as a dispositive "pre-test" to the application of *Gorham*. Since *Egyptian Goddess*, more than 30 district courts have found patented designs and accused products "plainly dissimilar," resolving cases on summary judgment or even at the pleading stage. See, e.g., *Kohler Co. v. Signature Plumbing Specialties LLC*, No. 23-cv-9686 (AS), 2024 U.S. Dist. LEXIS 215096 (S.D.N.Y. Nov. 25, 2024). As Chief Judge Moore explained in dissent, the shift from similarity to dissimilarity is consequential – the framing around dissimilarity skews the analysis toward non-infringement.

This Court should correct this misreading and reaffirm that *Gorham* is the exclusive test.

### B. THE "PLAINLY DISSIMILAR" PRE-TEST UNTETHERS THE INFRINGEMENT ANALYSIS FROM THE PRIOR ART

The "plainly dissimilar" pre-test departs from the ordinary observer test by authorizing resolution questions of design patent infringement *without reference to the prior art*. See *Shunock v. Apple, Inc.*, 1:23-cv-08598, 2026 U.S. Dist. LEXIS 63095, *43 (S.D.N.Y. March 25, 2026) (granting summary judgment of non-infringement *without reference* to the prior art)(*collecting cases*). *Gorham* requires that infringement be assessed from the perspective of an "ordinary

observer," and as this Court confirmed in *Egyptian Goddess*, that the observer is "*conversant with the prior art*." *Egyptian Goddess*, 543 F.3d at 678 (emphasis added). The prior art is therefore not optional; it is inherent in the analysis. The "plainly dissimilar" pre-test replaces the ordinary observer—who is deemed *conversant* with the prior art—with one who is *ignorant of it,* creating a direct conflict with the governing standard.

### C. THE "PLAINLY DISSIMILAR" PRE-TEST DISPLACES THE FACT-FINDER

Under *Gorham*, infringement is a question of fact: whether an ordinary observer would view the overall designs as "substantially the same." By contrast, the "plainly dissimilar" pre-test recasts that inquiry into a threshold determination of non-infringement that courts resolve as a matter of law. As Chief Judge Moore explained, that shift not only invites courts to substitute their own visual judgment, but also reframes the question in a manner that is both easier to resolve and systematically biased toward findings of non-infringement.

Moreover, there is no need for a separate "plainly dissimilar" framework. Rule 56 already governs early disposition, permitting summary judgment only where no reasonable factfinder could conclude that an ordinary observer, familiar with the prior art, would find the designs substantially the same. That standard

allows courts to resolve clear cases while remaining faithful to—and applying—*Gorham*.

The Court should clarify that the "plainly dissimilar" pre-test is not a separate freestanding test and reaffirm that *Gorham* provides the sole judicially-sanctioned test.

## II. *EN BANC* REVIEW IS NEEDED TO MAKE CLEAR THAT CLAIM CONSTRUCTION MAY NOT BE USED TO EXCLUDE ANY *VISUAL* PORTIONS OF A CLAIMED DESIGN

District courts increasingly use claim construction to exclude visual portions of a design as purportedly "functional," "non-novel," or "non-ornamental," and then assess infringement based on a "narrowed" —often significantly truncated—version of the design rather than the design *as issued*. That approach alters the claimed design, contrary to §171, which protects "a design," and to *Gorham*, which requires evaluation of the design as a whole. This issue has persisted for decades and continues to generate confusion in the case law.[3] *En banc* review is needed to bring claim construction back into alignment with §171 and *Gorham*.

[3] See Jason J. Du Mont & Mark D. Janis, *Functionality in Design Protection Systems*, 19 J. Intell. Prop. L. 261, 271-280 (2012) (discussing the "most intractable problem in the modern law of design patent functionality"); see also Christopher V. Carani, *All or Nothing at All: Design Patent's Ornamentality Requirement and the Failings of Feature Filtration*, 36 Berkeley Tech. L.J. 213 (2021).

### A. DESIGN PATENTS CONFER AN EXCLUSIVE RIGHT TO THE DESIGN *AS CLAIMED*, NOT A JUDICIALLY NARROWED VERSION OF THAT DESIGN

A design patent grants the patentee the exclusive right to the design "as shown and described" in the patent, an indivisible visual claim that was examined and allowed by the USPTO, and is protected by statute. This Court has long recognized that "[a] design is a unitary thing and all of its portions are material in that they contribute to the appearance which constitutes the design." *See In re Blum*, 374 F.2d 904, 907 (C.C.P.A. 1967). Solid lines in the drawings define the claimed design. *See Elmer v. ICC Fabricating, Inc.*, 67 F.3d 1571, 1577 (Fed. Cir. 1995). When a court, through claim construction, either excludes visual elements as unprotectable or limits the claim to select protectable elements, it deprives the patentee of the exclusive right to the design secured by statute.

Here, although RoM was granted a patent directed to the design claim as shown and described, the court used claim construction to exclude the shapes of several portions of the design on the ground that they served a "functional purpose." This exceeded claim construction, replacing the patentee's claimed (and USPTO-granted) design with a judicially created one and thus depriving the patentee the exclusive right secured by the patent grant.

Excluding visual elements is likewise incompatible with *Gorham's* design-as-a-whole mandate. *Gorham* makes clear that the "controlling consideration" is

the “effect of the *whole* design” upon the eye, not an abstracted subset assembled after excising individual visual components. *Gorham*, 81 U.S. at 526, 528 (emphasis added). Notably, in *Gorham*, while the claimed design was for a plainly functional article—a spoon handle—the Court did not factor out the handle’s shape as serving a functional purpose. Instead, the comparison was to the overall visual appearances of the claimed and accused designs.



**Gorham Patented Design** | **White Accused Design**

As a practical matter, excluding visual elements is confusing and unworkable. Portions of a design are typically integrated and interdependent, making it difficult or impossible to separate “functional,” “ornamental,” “old,”

and "new" elements. The result is either that nothing meaningful remains, or that only a small and distorted subset is left behind.

A simple example illustrates the problem. Consider a novel, ornamental design for a utensil depicting a spoon bowl, a handle, fork tines, and a knife edge. Each element may be functional or present in the prior art. If excluded on those grounds, however, nothing remains of the claimed design.

**As Issued**




**As Construed**




If only one element is retained, the claim is reduced to a fragment untethered from the overall appearance. In either case, the "construed" claim no longer reflects what was examined or issued.

The Federal Circuit has, at times, recognized the factoring out problem. In *Ethicon Endo-Surgery, Inc. v. Covidien, Inc.*, the Court rejected a district court's effort to exclude elements it viewed as functional, emphasizing that each component's visual form contributes to the overall appearance. 796 F.3d 1312, 1327–29 (Fed. Cir. 2015). Likewise, in *Sport Dimension, Inc. v. Coleman Co.*,

the Court explained that even where elements serve functional purposes, their appearances remain part of the claimed design. 820 F.3d 1316, 1322 (Fed. Cir. 2016).

Although these decisions moved in the right direction, they did not go far enough, and unchecked and inconsistent language in other opinions has allowed the practice of excluding visual elements under the guise of claim construction to persist. *See, e.g., Oddzon Prods. v. Just Toys, Inc.*, 122 F.3d 1396, 1405 (Fed. Cir. 1997) ("A design patent *only* protects the novel, ornamental features of the patented design." (emphasis added)); *Richardson v. Stanley Works, Inc.,* 597 F.3d 1288, 1293 (Fed. Cir. 2010) ("[w]here a design contains both functional and non-functional elements, the scope of the claim must be construed in order to identify the non-functional aspects of the design as shown in the patent."). *En banc* review is warranted to ensure that the claim construction process respects the design patent as issued and the statutory right it confers.

### B. NOVELTY AND ORNAMENTALITY ARE DESIGN-LEVEL VALIDITY QUESTIONS FOR THE FACTFINDER, NOT FEATURE-BY-FEATURE CLAIM CONSTRUCTION ISSUES FOR THE COURT

There is no basis for courts to assess novelty or ornamentality on a feature-by-feature basis. The requirements of novelty and ornamentality are applied *at the "design" level*, not the individual feature level. *See,* §171; *see also, Rosco, Inc. v. Mirror-Lite Co.*, 304 F.3d 1373, 1378 (Fed. Cir. 2002). Further, as the

exclusive right conferred under §171 is only for the indivisible *visual whole*, there simply is no need to conduct assessments on a feature-by-feature basis; the statute does not confer *independent* protection for any constituent elements of the claimed design.

Moreover, this Court has consistently held that determinations of novelty and ornamentality involve fact-intensive inquiries *for the fact-finder*, not matters of law for resolution by the court. *See, e.g.*, *Rosco*, 304 F.3d at 1378 (holding that lack of ornamentality presents a fact question, requiring "clear and convincing evidence" that the claimed design is "the only possible form of the article that could perform its function").

### C. CLAIM CONSTRUCTION MAY DISTINGUISH UNDERLYING FUNCTIONAL ATTRIBUTES OR GENERAL CONCEPTS, BUT MAY NOT EXCLUDE ANY *VISUAL* PORTIONS OF THE OVERALL CLAIMED DESIGN

Claim construction has a legitimate role in design patent cases. As this Court explained in *Egyptian Goddess*, courts may guide the factfinder on issues bearing on claim scope, including drafting conventions, prosecution history, and, where appropriate, the distinction between ornamental and functional characteristics of a design. *Egyptian Goddess*, 543 F.3d at 680. That latter guidance ensures that design patents are not misunderstood as claiming general concepts or underlying functional purposes. Properly understood, foundational

cases such as *OddzOn* and *Richardson* do no more than reinforce that principle. But that role does not permit courts to truncate or narrow the claimed visual appearance. Whether framed as excluding "unprotectable" elements or identifying a subset of "protectable" ones, the result is the same: a judicially edited design that departs from the claim as issued, contrary to §171 and *Gorham*'s directive.

Recasting the inquiry as one of identifying "protectable" ornamental elements is further flawed as it reintroduces the *verbalization* problem that *Egyptian Goddess* sought to curb. Describing designs in words risks placing undue emphasis on particular features and diverting attention from the overall visual impression. *See Crocs, Inc. v. Int'l Trade Comm'n*, 598 F.3d 1294, 1302 (Fed. Cir. 2010) (warning that a verbalization of a claim "risks undue emphasis on particular features of the design rather than examination of the design as a whole"). For the same reasons *Egyptian Goddess* cautioned against articulating claimed designs, courts should not attempt to articulate so-called ornamental aspects of that design.

In sum, claim construction may clarify that design patents do not cover general concepts or underlying functional purposes, but it cannot be used to

exclude any *visual* portions of the claimed appearance. *En banc* review is needed to restore clarity and eliminate the substantial confusion in the case law.

## CONCLUSION

AIPLA respectfully urges rehearing *en banc* to clarify that "plainly dissimilar" is not a separate infringement pre-test and that claim construction may not exclude visual portions of the claimed design conferred by statute.

April 17, 2026

Respectfully submitted,

/s/ Christopher V. Carani
Christopher V. Carani
Philipp Ruben
Counsel for Amicus Curiae
AMERICAN INTELLECTUAL
PROPERTY LAW ASSOCIATION

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS

**Case Number:** 2023-2427

**Short Case Caption:** Range of Motion Products, LLC v. Armaid Company Inc.

**Instructions:** When computing a word, line, or page count, you may exclude any items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

- ☐ the filing has been prepared using a proportionally-spaced typeface and includes 2,598 words.
- ☐ the filing has been prepared using a monospaced typeface and includes ________ lines of text.
- ☐ the filing contains ________ pages / ________ words / ________ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. ________).

Date: 04/17/2026

Signature: /s/ Christopher V. Carani

Name: Christopher V. Carani

Save for Filing