**2023-2427**

**UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT**

RANGE OF MOTION PRODUCTS, LLC,
*Plaintiff-Appellant,*

v.

ARMAID COMPANY INC.,
*Defendant-Appellee.*

On Appeal from the United States District Court for the District of Maine Case No. 1:22-cv-00091

# BRIEF OF *AMICUS CURIAE* PERRY J. SAIDMAN IN SUPPORT OF THE COMBINED PETITION FOR REHEARING AND REHEARING *EN BANC*

Perry J. Saidman
Perry Saidman, LLC
3 Island Ave.
Suite 8i
Miami Beach, FL 33139
(202) 236-0753
ps@perrysaidman.co

Matthew J. Dowd
Robert J. Scheffel
Dowd Scheffel PLLC
1717 Pennsylvania Ave., NW
Suite 1025
Washington, D.C. 20006
(202) 995-9175
mdowd@dowdscheffel.com
rscheffel@dowdscheffel.com

FORM 9. Certificate of Interest

Form 9 (p. 1)
March 2023

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

**Case Number** 23-2427

**Short Case Caption** Range of Motions Products, LLC v. Armaid Company Inc.

**Filing Party/Entity** Perry J. Saidman

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.
2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.
3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.
4. Please do not duplicate entries within Section 5.
5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes. Fed. Cir. R. 47.4(c).

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 04/17/2026

Signature: /s/ Perry J. Saidman

Name: Perry J. Saidman

| **1. Represented Entities.** Fed. Cir. R. 47.4(a)(1). | **2. Real Party in Interest.** Fed. Cir. R. 47.4(a)(2). | **3. Parent Corporations and Stockholders.** Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.<br><br>☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.<br><br>☑ None/Not Applicable |
| Perry J. Saidman | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐ Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| Perry J. Saidman of Perry Saidman, LLC | Matthew J. Dowd of Dowd Scheffel PLLC | Robert J. Scheffel of Dowd Scheffel PLLC |
| | | |
| | | |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☐ Yes (file separate notice; see below) ☐ No ☑ N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........ ii

INTEREST OF *AMICUS CURIAE* ........ 1

ARGUMENT ........ 2

I. *Gorham* Requires Viewing The Designs As A Whole To Determine Design Patent Infringement ........ 2

II. *Litton* Incorporated Prior Art Into The Infringement Analysis ........ 3

III. *Egyptian Goddess* Emphasized The Prior Art's Role When Comparing The Patented And Accused Designs ........ 4

IV. "Sufficiently Distinct/Plainly Dissimilar" Is A Purely Subjective Test Unsupported By Precedent ........ 7

V. The Federal Circuit Recognized The Problem Of Sufficiently Distinct ........ 9

VI. A Three-Way Comparison Of The Patented Design, Accused Design, And Prior Art Provides Needed Objectivity ........ 10

VII. Conclusion ........ 14

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Applied Arts Corp. v. Grand Rapids Metalcraft Corp.*,
67 F.2d 428 (6th Cir. 1933) ..... 6

*Avia Group International v. L.A. Gear California Inc.*,
853 F.2s 1557 (Fed. Cir. 1988) ..... 1

*Columbia Sportswear North America, Inc. v. Seirus Innovation Accessories, Inc.*,
80 F.4th 1363 (Fed. Cir. 2023) ..... 12

*Egyptian Goddess, Inc. v. Swisa, Inc.*,
543 F.3d 665 (Fed. Cir. 2008) (en banc) ..... 1, 4-8, 10-14

*Fanimation, Inc. v. Dan's Fan City, Inc.*,
No. 1:08-cv-1071-TWP-WGH, 2010 WL 5285304 (S.D. Ind. Dec. 16, 2010) ..... 11, 12

*Gorham Manufacturing Co. v. White*,
81 U.S. 511 (1871) ..... 1, 2-4, 6, 7, 10, 12

*Litton Systems, Inc. v. Whirlpool Corp.*,
728 F.2d 1423 (Fed. Cir. 1984) ..... 3-7

*Range of Motion Products, LLC v. Armaid Co.*,
116 F.4th 981 (Fed. Cir. 2026) ..... 8, 9, 13

*Revision Military, Inc. v. Balboa Manufacturing Co.*,
700 F.3d 524 (Fed. Cir. 2012) ..... 9, 10

*Sears, Roebuck & Co. v. Talge*,
140 F.2d 395 (8th Cir. 1944) ..... 3, 6

*Samsung Electronics Co. v. Apple Inc.*,
580 U.S. 53 (2016) ..... 1

*Smith v. Whitman Saddle Co.*,
148 U.S. 674 (1893)........................................................................ 5

**Statutes and Rules**

Fed. R. App. P. 29(c)(4)........................................................................ 1

## INTEREST OF *AMICUS CURIAE*[1]

*Amicus Curiae* Perry J. Saidman is one of the leading attorney-scholars in the field of design-patent law. He represented Avia Group International in the seminal design patent infringement case of *Avia Group International v. L.A. Gear California Inc.*, 853 F.2d 1557 (Fed. Cir. 1988). He has authored notable appellate briefs, including on behalf of Apple Inc. in *Egyptian Goddess v. Swisa*, 543 F.3d 665 (Fed. Cir. 2008) (en banc), and in *Samsung Electronics Co. v. Apple Inc.*, 580 U.S. 53 (2016).

In 1989, Mr. Saidman founded AIPLA's Industrial Designs Committee and was the founder and co-chair of the Design Protection Committee of the Industrial Designers Society of America. He has taught design law at George Washington University's National Law Center and has testified before the House Judiciary Committee regarding design legislation. He is a prolific author and speaker, having published dozens of articles and delivered over 100 presentations in the United States and

---

[1] No party's counsel authored this brief in whole or part; no party or party's counsel contributed money intended to fund preparing or submitting this brief; and no person other than amicus or his counsel contributed money to fund preparing or submitting this brief. Fed. R. App. P. 29(c)(4).

abroad. *Amicus* remains very active in design-patent issues. *Amicus* has no stake in the parties or in the outcome of the case.

## ARGUMENT

### I. *Gorham* Requires Viewing The Designs As A Whole To Determine Design Patent Infringement

The law of design-patent infringement traces its roots to the seminal case of *Gorham Manufacturing Co. v. White,* 81 U.S. 511 (1871). There, the Circuit Court for the Southern District of New York, in arriving at a conclusion of non-infringement, framed the issues as "whether the two designs can be said to be substantially the same when examined intelligently side by side." *Id.* at 523. In other words, according to the Circuit Court, "[t]here must be such a comparison of the features which make up the two designs." *Id.*

The Supreme Court soundly rejected that formulation of the infringement test. Writing for the Court, Justice Strong explained: "With this we cannot concur. Such a test would destroy all the protection which the act of Congress intended to give." 81 U.S. at 527. The Court identified what it characterized as minor differences between the patented and accused designs, but it ultimately decided that the designs must be compared as a whole in determining substantial sameness. *Id.* at 530. It is

"the effect of the whole design"—rather than individual features—that controls the inquiry. *Id.* The Court emphasized that, in determining the true test of identity of design, "it must be sameness of appearance, and mere difference of lines in the drawing or sketch, a greater or smaller number of lines, or slight variances in configuration, if sufficient to change the effect upon the eye, will not destroy the substantial identity." *Id.* at 526-27.

In short, minor differences do not preclude infringement; the overall appearance is what matters. *Id.* at 527.

## II. *Litton* Incorporated Prior Art Into The Infringement Analysis

In *Litton Systems, Inc. v. Whirlpool Corp.,* 728 F.2d 1423 (Fed. Cir. 1984), the Federal Circuit adopted the point-of-novelty test. There, the Court explained that, "[f]or a design patent to be infringed, however, no matter how similar two items look, 'the accused device must appropriate the novelty in the patented device which distinguishes it from the prior art.'" *Id.* at 1444 (quoting *Sears, Roebuck & Co. v. Talge*, 140 F.2d 395, 396 (8th Cir. 1944)). To determine the point of novelty, the patented design was compared with the prior art, and elements of the patented design that were in the prior art were filtered out, leaving any elements

that made up the point of novelty. *Id.* To be found infringing, the accused design had to include the point of novelty.

The point-of-novelty test was arguably the Court's effort to add objectivity to the infringement analysis in a way that aligned with *Gorham*. The *Litton* approach was at least somewhat objective, enabling the factfinder to assess infringement in way that was not completely subjective. The test also accounted for the prior art, albeit in a manner that was later rejected in *Egyptian Goddess* due to the many problems in its application. Thus, while the point-of-novelty test was ultimately a flawed paradigm, the apparent motivation behind its creation—accounting for prior-art designs—was valid.

## III. *Egyptian Goddess* Emphasized The Prior Art's Role When Comparing The Patented And Accused Designs

*Gorham*'s ordinary observer test rightly considered the similarities of the designs, but it arguably lacked sufficient guideposts for a factfinder to determine—in a sufficiently objective manner—whether two designs are substantially the same. Indeed, when judges are assessing potential factual disputes on summary judgment, they typically list similarities and differences between the two designs and then merely reach a largely subjective finding of infringement or no infringement.

This Court's en banc decision in *Egyptian Goddess* suggests that, at the time, the Court sensed the danger of having an overly subjective infringement test. 543 F.3d at 683. The case law suggested a yearning for an improvement to *Litton*'s point-of-novelty test while maintaining a sufficiently objective frame of reference to assess infringement. As is evident from the full Court's opinion, that objective frame of reference necessarily flows from a consideration of the prior art.

In its opinion, this Court surveyed the relevant case law and noted many cases where factfinders compared the patented design, the accused design, and the prior art to provide some objectivity to the infringement determination. *See id.* at 670-78. The full Court then concluded that the prior art was important in evaluating whether two designs are substantially the same. *Id.* at 678. The Court discussed the importance of the prior art in several of these cases. The Court noted how the Supreme Court in *Smith v. Whitman Saddle Co.*, 148 U.S. 674 (1893), "invoked the ordinary observer test in which the observer was comparing the patented and accused designs in the context of similar designs found in the prior art." *Egyptian Goddess*, 543 F.3d at 674. The Court read subsequent cases as applying the same principle, namely "interpreting the ordinary

observer test of *Gorham* to require that the perspective of the ordinary observer be informed by a comparison of the patented design and the accused design in light of the prior art." *Id.* In other words, "*Litton* and the predecessor cases on which it relied are more properly read as applying a version of the ordinary observer test in which the ordinary observer is deemed to view the differences between the patented design and the accused product in the context of the prior art." *Id.* at 676.

The full Court also analyzed regional-circuit precedents (pre-dating the Federal Circuit) to show that those courts likewise understood the need to consider the prior art in an infringement analysis. For instance, in *Sears, Roebuck & Co. v. Talge*, 140 F.2d 395, 396 (8th Cir. 1944), the Eighth Circuit required "a comparison of the features of the patented designs with the prior art and with the accused design." In *Applied Arts Corp. v. Grand Rapids Metalcraft Corp.*, 67 F.2d 428, 429 (6th Cir. 1933), the Sixth Circuit held that the accused ash tray would not appear to be the same as the claimed ash tray as long as "similitude of appearance is . . . judged by the scope of the patent in relation to the prior art."

Ultimately, this Court explained the rationale for considering the prior art: "Particularly in close cases, it can be difficult to answer the

question whether one thing is like another without being given a frame of reference." *Egyptian Goddess*, 543 F.3d at 676-77. Thus, "the background prior art[] provides such a frame of reference and is therefore often useful in the process of comparison." *Id.*

The overwhelming emphasis in *Egyptian Goddess* is that the prior-art designs provide the necessary and proper frame of reference for the trier of fact when comparing the patented and accused designs. Such an approach became even more important to maintain objectivity in infringement determinations after *Litton*'s point-of novelty-test was abolished.

## IV. "Sufficiently Distinct/Plainly Dissimilar" Is A Purely Subjective Test Unsupported By Precedent

*Egyptian Goddess* included an unfortunate sentence, unsupported by precedent, that conflicted with its overarching emphasis on judging substantial similarity in light of the prior art: "In some instances, the claimed design and the accused design will be *sufficiently distinct* that it will be clear without more that the patentee has not met its burden of proving the two designs would appear 'substantially the same' to the ordinary observer, as required by *Gorham*." 543 F.3d at 678. This sentence has been uniformly interpreted to mean that a court need not examine

the prior art if it determines that the two designs at issue are "sufficiently distinct" or "plainly dissimilar."

Concluding that two designs are "sufficiently distinct"—without also reviewing the prior art—is inescapably purely subjective. No case-law guidance or precedent explains how a factfinder is to reach a conclusion of "sufficiently distinct." Merely noticing differences between the patented and accused designs should not be enough—particularly for a question of fact.

The "sufficiently distinct" test—to the extent it can be fairly called a "test"—is hopeless vague. "Distinct" of course means that the two designs are different. But as a practical matter, there are always distinctions, always differences. And *Egyptian Goddess* offered nothing on the meaning of "sufficiently." Because the "sufficiently distinct" test is so unmoored from any objective analysis, it has become the *de rigueur* defense for accused infringers, pleaded in almost every design-patent case since *Egyptian Goddess* was decided. The result is that far too many close cases get thrown out on summary judgment even though reasonable disputes of fact exist. *Cf. Range of Motion Prods., LLC v. Armaid Co.*, 166 F.4th 981, 998 (Fed. Cir. 2026) (Moore, C.J., dissenting) ("It is hard for

me to look at the patented pool design and the accused product and agree that no reasonable juror could find that their overall appearance is substantially similar.").

## V. The Federal Circuit Recognized The Problem Of Sufficiently Distinct

In *Revision Military, Inc. v. Balboa Manufacturing Co.*, 700 F.3d 524, 527 (Fed. Cir. 2012), the district court "did not consider the prior art context in which the ordinary observer test is applied." On appeal, this Court vacated and remanded, noting that although the district court deemed it "not a particularly close case," "the record suggests otherwise." *Id.* Indeed, as is evident from the relevant designs shown in the Court's opinion, the substantial similarity is close enough to require consideration of prior art in order to assess infringement. *Revision Military* is a stark example of how ignoring the prior art can entice a district court to go down the path of "sufficiently distinct" without any objective reasoning and without considering the necessary prior art.

| **D537,098 and D620,039 Designs** | **Accused Design: Bobster Bravo** |
| --- | --- |
|   |    |

## VI. A Three-Way Comparison Of The Patented Design, Accused Design, And Prior Art Provides Needed Objectivity

Cases decided both before and after *Egyptian Goddess* have used a three-way comparison, where the factfinder considers the patented design, the accused design, and the closest prior-art design. If the patented and accused designs are closer in overall appearance to each other than either is to the prior art, despite minor differences, a finding of infringement is more likely. But if the patented or accused designs are closer in overall appearance to the prior-art design, non-infringement is more likely. These holistically driven outcomes align with *Gorham*'s guidance that overall appearances, not individual differences, are the key to a design-patent infringement analysis.

One instructive district court case decided shortly after *Egyptian Goddess* is *Fanimation, Inc. v. Dan's Fan City, Inc.*, No. 1:08-CV-1071-TWP-WGH, 2010 WL 5285304 (S.D. Ind. Dec. 16, 2010). The court's three-way comparison is shown below. *Id.* at *3.

| **D475,450 Design** | **Accused Design** | **Prior Art** |
|---|---|---|
|  |  |  |

The district court first quoted from *Egyptian Goddess*: "Simply stated, prior art can serve as a guiding reference point, informing the hypothetical ordinary observer's analysis." *Fanimation*, 2010 WL 5285304 at *2. The court then identified several differences between the patented and accused designs. *Id.* at *3. Significantly, the court observed that "the significance of these differences is hotly contested." *Id.* Not surprisingly, the accused infringer "deem[ed] the differences significant," but the patent owner saw them as "trivial." *Id.* The court recognized the factual dispute, however, and concluded that it "would be senseless to

attempt to divine the significance of these differences without viewing the prior art." *Id.*

More recently, in *Columbia Sportswear North America, Inc. v. Seirus Innovative Accessories, Inc.*, 80 F.4th 1363, 1369 (Fed. Cir. 2023), this Court reviewed a district court's three-way comparison, as shown below.

<table>
<tr><th>D657,093 Design</th><th>Accused Design</th><th>Prior Art</th></tr>
<tr><td></td><td>
</td><td>
</td></tr>
</table>

This Court noted that the district court had compared the prior art "side-by-side" with both the patented design and the accused design. *Id.*

The three-way comparisons that have been used (though not consistently enough) align with the Supreme Court's guidance in *Gorham*. The controlling inquiry is whether the claimed and accused designs are "substantially the same" in the eye of an ordinary observer, and the ordinary observer will almost always compare designs in the context of what is already known, *i.e.*, the prior art. *Egyptian Goddess* reaffirmed that

this is the "sole test" for infringement and made clear that the ordinary observer is deemed conversant with the prior art. 543 F.3d at 678.

Unfortunately, too many decisions have since strayed from *Egyptian Goddess*'s primary teaching and instead elevated the single sentence about "sufficiently distinct" to a dominating role in far too many design-patent disputes. The better approach, in *Amicus*'s view, is that "the court should *always* 'compar[e] the claimed and accused designs in light of the prior art,'" "with no special exception for [so-called] plainly dissimilar designs." *Range of Motion Prods.*, 166 F.4th at 1000 (Moore, C.J., dissenting) (emphasis in original) (quoting *Egyptian Goddess*, 543 F.3d at 677).

The driving force behind this approach is that infringement is ultimately a question of fact for the jury to decide, even if the judge might have a strong view of potential infringement one way or the other. Chief Judge Moore recognized that there was "the possibility that a jury could find otherwise" in terms of infringement. *Id.* at 1000-01. But that is not a sufficient reason "to tak[e] the question from the fact finder" and simply employ a short-cut analysis that avoids the prior art. *Id.*

## VII. Conclusion

Too many district courts label the patented and accused designs as "sufficiently distinct" or "plainly dissimilar" without regard to the prior art, which is contrary to the overwhelming teaching from *Egyptian Goddess*. Many, if not most, of these cases were decided on summary judgment, thus improperly preventing the jury from making the factual determination of infringement. The Court should grant the petition for rehearing en banc to correct the law.

Respectfully submitted,

By: /s/ Perry J. Saidman

Perry J. Saidman
Perry Saidman, LLC
3 Island Ave.
Suite 8i
Miami Beach, FL 33139
(202) 236-0753
ps@perrysaidman.com

Matthew J. Dowd
Robert J. Scheffel
Dowd Scheffel PLLC
1717 Pennsylvania Ave., NW
Suite 1025
Washington, D.C. 20006
(202) 995-9175
mdowd@dowdscheffel.com
rscheffel@dowdscheffel.com

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS

**Case Number:** 23-2447

**Short Case Caption:** Range of Motion Products, LLC v. Armaid Company Inc.

**Instructions:** When computing a word, line, or page count, you may exclude any items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

☑ the filing has been prepared using a proportionally-spaced typeface and includes 2488 words.

☐ the filing has been prepared using a monospaced typeface and includes ______ lines of text.

☐ the filing contains ______ pages / ______ words / ______ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. ______).

Date: 04/17/2026

Signature: /s/ Perry J. Saidman

Name: Perry J. Saidman